# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRITON CONTAINER INTERNATIONAL LIMITED,<br><br>      Plaintiff,<br><br>v.<br><br>m/v SOLENT STAR, m/v SOUTHAMPTON STAR, their engines, tackle, apparel, appurtenances, etc., and CERTAIN OCEAN CARGO CONTAINERS, *in rem,*<br>C.I. BANACOL S.A. also known as, COMMERCIALIZADORA INTERNACIONAL BANACOL DE COLOMBIA S.A., *in personam,*<br><br>      Defendants. | CASE NO.<br><br><br>**VERIFIED COMPLAINT IN ADMIRALTY** |

Plaintiff alleges:

## PARTIES

1. Plaintiff, Triton Container International Limited ("Triton"), is a Bermuda company with its principal place of business at 55 Green Street, San Francisco, California. 94111.  On information and belief, Defendant., C.I. Banacol S.A. ("Banacol"), also known as Commercializadora Internacional Banacol de Colombia S.A., is a Colombian company with its principal place of business in Colombia.  The defendant vessels, m/v SOLENT STAR and m/v SOUTHAMPTON STAR (the "Vessels"), are presently owned by, chartered to, or operated by Banacol.  The defendant ocean cargo containers set forth on Exhibit 1, attached (the "Containers") are on lease from Triton to Banacol under the Agreement (defined below).  The Vessels and the Containers are or may be, during the pendency of process in this action, present in this district.

-1-

## JURISDICTION

2.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure over which the Court has jurisdiction under 28 U.S.C. § 1333.

## CLAIM FOR BREACH OF MARITIME CONTRACTS

3.      Triton and Banacol entered into a maritime contract (the "Agreement") (Triton reference number: BNC 70), by which Triton leased ocean cargo containers to Banacol at specified rates for use in the carriage of cargo on the Vessels.  By the terms of the Agreement, in particular, paragraph 11.e. of the Business Conditions, which are a part of the Agreement, Triton has furnished containers to the Vessels.

4.      Banacol has failed to pay amounts due under the Agreement, has failed to return the Containers to Triton, and is otherwise in default of its obligations under the Agreement. Triton terminated the Agreement by notice to Banacol dated November 25, 2013.

5.      As of January 22, 2014, Triton was entitled to damages from Banacol in the principal amount of $360,896.01 for rental and lease-related charges, plus interest, costs and attorney's fees.  Banacol is, in addition, liable for damage to containers already returned totaling $45,686.57.  Additional rental will continue to accrue on the Containers at the rate of approximately $1,890.00 per day.  Banacol will become liable for additional amounts for container damage as it returns containers.  Triton estimates, based upon average damage cost for containers returned already under the Agreement, that damage and resultant repair cost will be at least $2,000.00 per Container.

6.      Banacol is obliged to pay Triton's attorneys' fees pursuant to paragraph 11.d of the Business Conditions.

7.      On amounts not paid when due, Banacol is obliged to pay as additional rental a service charge of 18% per annum pursuant to paragraph 2.b of the Business Conditions.

8.      As of January 22, 2014, the replacement value of the Containers was $2,880,000.00 for which Banacol is liable.  Because of Banacol's failure to return the Containers after Triton's demand, Triton must now take steps to recover them and will incur costs as a result.  Upon information and belief, Banacol will return the remaining Containers in damaged condition.

9.      Triton has performed all obligations on its part to be performed under the Agreement.  All conditions precedent, if any, to the maintenance of this action and to an award of damages to Triton have occurred, been waived or otherwise satisfied.

## PRAYER FOR RELIEF

Triton prays that the Court:

1.      Enter judgment against Banacol in Triton's favor for all sums due under the Agreement plus costs, prejudgment interest and attorney's fees;

2.      Order issuance of a warrant of arrest under Supplemental Admiralty Rule C against the Vessels for:

| | |
|---|---|
| $   360,896.01 | Rental and related charges as of January 22, 2014 |
| $     45,686.57 | Additional damage to Containers |
| $   180,000.00 | Estimated repair cost on unreturned Containers |
| $   689,850.00 | One year's additional rental on the Containers |
| $   100,000.00 | Estimated service charge on amounts due |
| $     50,000.00 | Estimated attorney's fees and costs |
| $ 1,426,432.58 | TOTAL. |

3.      Order issuance of a warrant of arrest under Supplemental Admiralty Rule D against the Containers;

    4.     Grant such other, further and different relief in Triton's favor as may be just and proper.

Dated: January __, 2014

                   REEVES McEWING, LLP

                   BY: _____
                     RAYMOND LETULLE, ESQUIRE
                     719 E. Passyunk Avenue
                     Philadelphia, PA  19147
                     (267) 324-3773
                     letulle@lawofsea.com

Date: January 30, 2014

## VERIFICATION

I, Edward L. Thomas, state that I am Executive Vice President and Chief Operating Officer of Triton Container International Limited.  I am authorized to sign this verification.

I have read the allegations of the Verified Complaint in Admiralty.  The information in that Complaint is true and correct to my own knowledge except as to those matters stated on information and belief.  I believe those matters to be true.  The basis of my knowledge is my own personal knowledge and the business records of Triton Container International Limited.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 29th, 2014 at San Francisco, California.

_____
Edward L. Thomas

**EXHIBIT 1**

On-lease Inventory Details Report
Run Date:  22-Jan-2014 02:57 PM PST
Search Parameters:
Search criteria:  All containers onlease to BNCX.

| | Contract | Customer | Contract Type | Eqpt | Unit number | Mfr Date | Age | Refrigerant | Cooling Unit Mfr | Unit Model | Cladding | Dual Voltage | Datacorder | LOT Date | Days onlease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834300 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 2 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834316 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 3 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834321 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 4 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834337 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 5 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834358 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 6 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834363 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 7 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834384 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 8 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834390 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 9 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834403 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 10 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834445 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 11 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834450 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 12 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834471 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 13 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834511 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 14 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834527 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 15 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834532 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 16 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834548 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 17 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834569 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 18 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834574 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 19 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834609 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 20 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834614 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 21 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834640 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 22 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834656 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 15-Apr-05 | 3205 |
| 23 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834677 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 24 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834682 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 25 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834698 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 15-Apr-05 | 3205 |
| 26 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834717 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 27 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834738 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 28 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834759 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 29 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834785 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 30 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834804 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 31 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834810 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 32 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834830 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 33 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834846 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 34 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834851 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 35 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834867 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 36 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834888 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Apr-05 | 3213 |
| 37 | BNCX70-100000 | BNCX | LTL | R5 | TRIU8834893 | Jan-05 | 9 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 15-Apr-05 | 3205 |
| 38 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385679 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 31-Mar-06 | 2855 |

| | Contract | Customer | Contract Type | Eqpt | Unit number | Mfr Date | Age | Refrigerant | Cooling Unit Mfr | Unit Model | Cladding | Dual Voltage | Datacorder | LOT Date | Days onlease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385827 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 41 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385832 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Mar-06 | 2879 |
| 42 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385869 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 7-Mar-06 | 2879 |
| 43 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385874 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 3-Mar-06 | 2883 |
| 44 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385909 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 27-Mar-06 | 2859 |
| 45 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385914 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 46 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385940 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 47 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385956 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 48 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385961 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 49 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385977 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 50 | BNCX70-200000 | BNCX | LTL | R5 | TRIU8385998 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-005 | Steel | Single | Yes | 2-Mar-06 | 2884 |
| 51 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373256 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 3-May-06 | 2822 |
| 52 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373277 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 7-May-06 | 2818 |
| 53 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373298 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 29-Apr-06 | 2826 |
| 54 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373301 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 5-May-06 | 2820 |
| 55 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373317 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 5-May-06 | 2820 |
| 56 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373322 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 7-May-06 | 2818 |
| 57 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373338 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 58 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373370 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 59 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373390 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 60 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373404 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 61 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373410 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 3-May-06 | 2822 |
| 62 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373425 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 63 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373430 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 25-Apr-06 | 2830 |
| 64 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373446 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 65 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373467 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 25-Apr-06 | 2830 |
| 66 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373488 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 6-May-06 | 2819 |
| 67 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373493 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 29-Apr-06 | 2826 |
| 68 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373507 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 69 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373512 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 70 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373528 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 71 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373533 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 72 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8373507 | Jan-06 | 8 | R134a | CTC-ThinLine | 69NT40-541-302 | Steel | Single | Yes | 6-May-06 | 2819 |
| 73 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382031 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 25-Apr-06 | 2830 |
| 74 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382047 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 25-Apr-06 | 2830 |
| 75 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382094 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 76 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382113 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 77 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382129 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 78 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382134 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 79 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382181 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 28-Apr-06 | 2827 |
| 80 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382216 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 26-Apr-06 | 2829 |
| 81 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382237 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 82 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382263 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |
| 83 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382290 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 27-Apr-06 | 2828 |

| | Contract | Customer | Contract Type | Eqpt | Unit number | Mfr Date | Age | Refrigerant | Cooling Unit Mfr | Unit Model | Cladding | Dual Voltage | Datacorder | LOT Date | Days onlease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 84 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382319 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 7-May-06 | 2818 |
| 85 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382345 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 30-Apr-06 | 2825 |
| 86 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382366 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 28-Apr-06 | 2827 |
| 87 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382387 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 2-May-06 | 2823 |
| 88 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382411 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 3-May-06 | 2822 |
| 89 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382427 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 6-May-06 | 2819 |
| 90 | BNCX70-300000 | BNCX | LTL | R5 | TRIU8382453 | Oct-05 | 8.3 | R134a | CTC-ThinLine | 69NT40-541-006 | Steel | Single | Yes | 28-Apr-06 | 2827 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRITON CONTAINER<br>INTERNATIONAL LIMITED,<br><br>            Plaintiff,<br><br>v.<br><br>m/v SOLENT STAR, m/v<br>SOUTHAMPTON STAR, their engines,<br>tackle, apparel, appurtenances, etc., and<br>CERTAIN OCEAN CARGO<br>CONTAINERS, *in rem,*<br>C.I. BANACOL S.A. also known as,<br>COMMERCIALIZADORA<br>INTERNACIONAL BANACOL DE<br>COLOMBIA S.A., *in personam,*<br><br>            Defendants. | CASE NO.<br><br><br>**DECLARATION OF EDWARD L.<br>THOMAS IN SUPPORT OF<br>PLAINTIFF'S APPLICATION FOR<br>WARRANTS OF ARREST UNDER<br>SUPPLEMENTAL ADMIRALTY RULES<br>C AND D** |

I, Edward L. Thomas, declare,

1.      I am Executive Vice President and Chief Operating Officer of Triton Container International Limited ("Triton"). I have personal knowledge of the facts set forth in this declaration, except those asserted on information and belief.

2.      Triton and Banacol entered into a lease agreement (the "Agreement") by which Triton leased refrigerated ocean cargo containers to Banacol (Exhibit A, attached). The parties have amended the Agreement twice (Exhibits B and C, attached). With each amendment, the parties updated the Triton Business Conditions attached to each document and thus applicable to the Agreement. Clause 11.e. of those Business Conditions remained the same in each instance:

Lessee acknowledges that the containers furnished to it under this Agreement are leased in contemplation of use on vessels owned and/or operated and/or chartered and/or managed by Lessee and for the prosecution of voyages thereon, and that any container furnished to it hereunder is also furnished to the vessel on which the container is used. Lessee may use the container on more than one vessel owned, operated, chartered or managed by Lessee, and agrees that each time such a container is used in connection with the operation of a vessel, Lessor is furnishing such container to Lessee and the vessel anew and that Lessor is relying on the credit of the vessel in furnishing the container. Lessee agrees to maintain records reflecting the vessels and voyages upon which the containers furnished under this Agreement are used and shall make such records available to Lessor upon reasonable demand by Lessor.  Lessee agrees to notify Lessor in the event that containers furnished under this Agreement are used for a purpose other than in connection with the operation of vessels (which operation may include incidental use on land) and the prosecution of voyages thereon.  Lessee warrants that it is authorized to enter into this Agreement on behalf of any and all vessels owned and/or operated and/or chartered and/or managed by Lessee.

3.      Banacol has not paid amounts due under the Agreement and is thus in breach.  On November 25, 2013, Triton sent Banacol a notice (Exhibit D, attached) by which Triton terminated the Agreement and demanded return of its containers.  Banacol has failed to rectify its payment default and wrongfully continues in possession of Triton's containers.

4.      On January 17, 2014, Triton's attorney, Charles Donovan, sent a letter (Exhibit E, attached) to Banacol demanding, under Clause 11.e. quoted above, the "records reflecting the vessels and voyages upon which the containers furnished under [the] Agreement [were] used . . . ."  I am informed and believe Banacol has not complied with that demand.

5.      I have attached a Statement of Account (Exhibit F, attached).  It accurately reflects, as of January 22, 2014, amounts due Triton from Banacol.  As Banacol has failed to return 90 containers under the Agreement, further amounts will continue to accrue at $21.00 per container per day or $1,890.00 per day until Banacol has returned or paid for all of Triton's containers.  The 90 containers unreturned as of January 22, 2014 have an agreed value under the Agreement of $2,880,000.00.

6.      Under the Agreement, Banacol must pay for damage done to the containers while in its possession.  Banacol has approved payment for damage to 2 containers already returned under the Agreement in the amount of $9,549.79.  An additional 11 containers are awaiting approval.  The damage cost for those containers is $36,136.78.  These amounts are in addition to the amounts shown on the Statement of Account attached.

7.      On January 15, 2014, Triton's Federico Diago received an email (Exhibit G, attached) from Banacol's Gustavo Herrera which stated, "Los equipos operan en la operación de nuestras tres sedes y en dos buques."  I am informed and believe that in English, this means, "The equipment is used in operations in our three loading facilities and two vessels."  I believe: (a) "the equipment" means Triton's containers; (b) "our three loading facilities" mean Banacol's facilities at Penn Terminal in Chester/Eddystone, Pennsylvania and two other facilities in Colombia and Costa Rica; and (c) "our . . . two vessels" are The SOLENT STAR and The SOUTHAMPTON STAR, the defendant vessels in this case.

8.      The sailing schedule for those two ships appears at http://altexchartered.com/NewsDetail/31/2/Schedule.  It shows The SOLENT STAR due to arrive at "CHE" on January 31, 2014 and to depart February 1, 2014.  I believe "CHE" means "Chester, Pennsylvania."  If one clicks on the link for "Rotation" on the website, it shows three facilities.  Clicking on the link for "Chester, PA-USA," brings one to the website of Penn Terminals in Eddystone, Pennsylvania, which I understand is adjacent to Chester, Pennsylvania.  The website also shows the steamship line to be "Altex Chartered Inc." and states this company is "the shipping line of the Corporación Banacol . . .," Triton's lessee. http://altexchartered.com/NewsDetail/26/2/Mission  The Penn Terminals website states, "Penn

Terminals is Banacol's port on their North American line."

http://www.pennterminals.com/clients.asp

    I declare under penalty of perjury that the foregoing statements are true.

San Francisco, CA
January 29, 2014

                                          Edward L. Thomas

# TRITON

# TRITON CONTAINER INTERNATIONAL LIMITED

## AGREEMENT

| Parties | | | Reference Code | | BNC 70 |
|---|---|---|---|---|---|

| Lessor | Lessee |
|---|---|
| **Triton Container International Limited** | **C.I. Banacol S.A.** |
| **55 Green Street** | **Calle 26 Sur # 48-12** |
| **San Francisco, California 94111** | **Envigado, Colombia** |
| | **South America** |

**Type of Agreement**

| | | Date of Agreement | Effective Date | March 1, 2005 |
|---|---|---|---|---|
| Master Lease | ☐ | | | |
| Long Term Lease | ☒ | | | |
| Other | ☐ | | Expiration Date | April 30, 2010 |

**Type Of Equipment**

| Dry Van Containers | | Flat Rack Containers | | Refrigerated Containers | |
|---|---|---|---|---|---|
| 20 Foot | ☐ | 20 Foot | ☐ | 20 Foot | ☐ |
| 40 Foot | ☐ | 40 Foot | ☐ | 40 Foot | ☐ |
| 40 Foot High Cube | ☐ | | | 40 Foot High Cube | ☒ |

| Open Top Containers | | Tank Containers | | Other | |
|---|---|---|---|---|---|
| 20 Foot | ☐ | 20 Foot | ☐ | | ☐ |
| 40 Foot | ☐ | | | | |

**Attachments:**
The following attachments comprise this Agreement:

CERTAIN PROCEEDS OF THIS LEASE ARE SUBJECT TO A SECURITY INTEREST IN
FAVOR OF ONE OR MORE FINANCIAL INSTITUTIONS WHICH HAS BEEN PERFECTED
BY FILING FINANCING STATEMENTS UNDER THE UNIFORM COMMERCIAL CODE
AGAINST THE APPLICABLE DEBTOR. A PURCHASE OF OR A SECURITY INTEREST IN THIS
DOCUMENT WILL VIOLATE THE RIGHTS OF THE OWNERS, PURCHASERS OR SECURED
PARTIES NAMED IN SUCH FINANCING STATEMENTS.

| | Month | Day | Year | | Month | Day | Year |
|---|---|---|---|---|---|---|---|
| Rate Schedule | March | 1 | 2005 | Other Conditions | March | 1 | 2005 |
| Delivery/Redelivery Schedule | March | 1 | 2005 | Expiration Schedule | March | 1 | 2005 |
| Damage Protection Plan | | | | Business Conditions | March | 1 | 2005 |
| Insurance Schedule | March | 1 | 2005 | | | | |

COUNTERPART   NO. _____ OF   3   SERIALLY   NUMBERED,
MANUALLY EXECUTED COUNTERPARTS.   TO THE EXTENT THAT THIS DOCUMENT
CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE IN EFFECT
IN ANY APPLICABLE JURISDICTION, NO SECURITY INTEREST IN THIS DOCUMENT
MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY
COUNTERPART OTHER THAN COUNTERPART NO. _____

The Attachments hereto represent the entire Agreement between the parties with respect to the subject matter hereof and may be amended or modified
only by an agreement in writing.  The undersigned agree to be bound by the terms and conditions of this Agreement:

| Triton Container International Limited | C.I. Banacol S.A. |
|---|---|
| **LESSOR** | **LESSEE** |
| Signature: | Signature: |
| Printed Name:   Susan Morrison | Printed Name: |
| Title:   **Vice President**  **Business Information Group** | Title: |
| Date:   MAY 18 2005 | Date: |
| | The signatory warrants authority to sign on Lessee's behalf |

Ref. Code:  BNC 70
Dated:  March 1, 2005
Page:  2

I.    RATE SCHEDULE

A.    **Lease Rate:**

| Equipment Type | Per Day Per Container |
|---|---|
| 40' high cube refrigerated container | USD 8.10 |

B.    **Lease Term:**

A Build Up Period of two (2) months is granted starting March 1, 2005.  Billing shall commence for each container on the date of pick-up ex Lessor's designated depot location in Guayaquil or May 1, 2005, whichever occurs first.  Each container shall remain on lease for a minimum period of five (5) years commencing May 1, 2005, the Lease Term Commencement Date.

C.    **Invoices:**

Invoices covering all charges under this Agreement will be issued in duplicate and mailed to:

C.I. Banacol S.A.
2655 Le Jeune Road Suite 1015
Coral Gables, FL 33134
Attn: Mr. Ramon Miyar

Lessee shall be invoiced monthly in arrears during the Build Up Period.  Commencing May 1, 2005, Lessee shall be invoiced monthly in advance.  Invoices are payable in full within thirty (30) days of date of such invoice.  Disputes, if any, should accompany the full payment.  Lessor will do its utmost to verify billing claims within sixty (60) days of being made aware of such claims and will either issue a credit or provide verification of correct billing or a combination thereof.  So long as Lessor is attempting verification in good faith, Lessee agrees not to withhold any monies due to Lessor.

D.    **Handling Charges and Trip Inspections:**

A handling charge of USD 45 per container shall apply on lease out.  A handling-in charge of USD 165 per container shall apply on redelivery.  Such handling-in charges cover the physical handling/lifting of containers, issuance of Equipment Interchange Reports (EIR's) and performance of post-trip inspections of machinery (PTI).  The performance of pre-trip inspections shall be for the account of Lessor.

Since handling charges reflect market and operational conditions, these charges may be adjusted subject to sixty (60) days prior notice by Lessor.

E.    **Replacement Value:**

| Equipment Type | Replacement Value |
|---|---|
| 40' high cube refrigerated container | USD 32,000 |

The above replacement value includes refrigeration machinery.

Replacement values will be depreciated straight line over ten (10) years with a residual value of fifty percent (50%) of the replacement value.

Accepted and Agreed

Lessor (initial)

Lessee (initial)

Ref. Code: BNC 70
Dated: March 1, 2005
Page: 3

II.   DELIVERY AND REDELIVERY SCHEDULE

   A.   **Delivery**:

      1.   Type, Quantity and Supply of Equipment:

         a.   60 x new 40' high cube refrigerated containers, Series Numbers TRIU 883430 – 883489 as specified per Attachment A1, will be supplied to Lessee under this Agreement. Such containers will be made available ex Lessor's designated depot location in Guayaquil during the Build Up Period.

         b.   Refrigeration Machinery is Carrier 69NT40-541-005 Thinline 511/Microlink 3 as per Attachment A2.

      2.   Lessor is held harmless for any delays in delivery or availability of equipment which are caused by circumstances beyond Lessor's control.

   B.   **Redelivery**:

      1.   Any redelivery is subject to ninety (90) days prior written notice by Lessee to Lessor.

      2.   Redelivery Locations:

After the minimum period is met, Lessor will accept redelivery of containers in its designated depot locations up to the corresponding maximum monthly quantities set forth below. No drop off charges shall apply.

| Triton Depot | Abbreviation | Maximum Monthly Quantity |
|---|---|---|
| Guayaquil | GYE | 30 |
| Puerto Limon | LIO | 30 |

      3.   Alternative redelivery locations may be mutually agreed upon in writing. If no alternative redelivery locations are agreed upon, redelivery is acceptable only according to the above schedule.

      4.   Lessor may amend the redelivery schedule by giving sixty (60) days prior written notice to Lessee.

Accepted and Agreed

Lessor (initial)

Lessee (initial)

Ref. Code: BNC 70
Dated: March 1, 2005
Page: 4

III.   INSURANCE SCHEDULE

A.    Without prejudice to any other obligation under this Agreement, Lessee shall, until it has returned all containers leased under this Agreement, at its own expense maintain insurance (collectively the "Insurance"), on an occurrence basis, satisfactory to Lessor as follows:

1.    All Risks Insurance ("ARI") of physical loss or damage to leased containers, with a maximum deductible of USD 5,000 per occurrence, including war risk, strike, riot and civil commotion in an amount equal to the total replacement value of the containers from time to time on lease under this Agreement, covering all containers while on land, afloat, in transit or at rest anywhere in the world, including General Average, sue and labor and salvage.  Minimum coverage will be USD 1,000,000 per occurrence.

2.    Comprehensive General Liability Insurance ("CGLI") against bodily injury and property damage in an amount not less than USD 1,000,000 combined single accident, minimum coverage of USD 2,000,000 per calendar year.

3.    a.  In the event the Through Transport Mutual Insurance Association Limited, the Through Transport Mutual Insurance Association (EurAsia) Ltd., or any designated agent, affiliated or subsidiary company of either of them (individually and collectively the "TT Club"), issues the Insurance, Lessee shall cause the TT Club: (1) to issue the ARI and the CGLI to Lessee; (2) to name Lessor as Loss Payee under the ARI, as its interests may appear; (3) to defend Lessor under the CGLI in any action in which Lessee is a defendant arising from or related to a container leased to Lessee.   The CGLI shall include Contractual Liabilities insurance (Third Party Liabilities, Reference S2/2004, paragraphs 1.4 and 1.4.1 for Ship Operator Cover and T3/2004, paragraphs 1.4 and 1.4.1 for Transport Operator Cover, or equivalent language in any subsequent revision).

b.  In the event insurers other than the TT Club issue the Insurance, Lessee shall cause the insurers: (1) to issue the ARI and the CGLI to Lessee; (2) to name Lessor as additional assured and direct loss payee under the ARI; (3) to name Lessor as an additional assured or joint assured under the CGLI and to defend Lessor under the CGLI in any action in which Lessee is a defendant arising from or related to a container leased to Lessee.

B.    Lessee shall, within thirty (30) days of the execution of this Agreement and thereafter at intervals of not more than twelve (12) calendar months, furnish Lessor with a certificate of insurance, signed by an insurance carrier or broker acceptable to Lessor, evidencing the Insurance.  All policies shall prohibit cancellation without thirty (30) days written notice to Lessor.

C.    Lessee shall not use or allow the containers to be used for any purpose not permitted or covered by the Insurance or do or allow to be done any act or thing by which the Insurance may be invalidated.

Accepted and Agreed

Lessor (initial)

Lessee (initial)

Ref. Code: BNC 70
Dated: March 1, 2005
Page: 5

IV.   OTHER CONDITIONS

A.   **Operation, Maintenance and Repair**:

1.   In addition to the provisions of Section 5 of the Triton Business Conditions attached hereto, Lessee agrees to maintain and repair the containers and refrigeration machinery in accordance with i) the instructions described in the latest edition of the IICL's General Guide For Refrigerated Container Inspection and Repair Manual (the "IICL Refrigerated Container Manual") and ii) the refrigeration machinery manufacturer's instruction, operation and service manuals (the "Manuals"). Lessor believes Lessee may obtain the Manuals from the manufacturer, Carrier Corporation, or the manufacturer's website (www.container.carrier.com). Lessor does not make any representation or warranty regarding the Manuals, their availability, or Lessee's ability to obtain access to them. Lessee shall take all steps necessary to obtain the Manuals and to maintain and repair the containers and refrigeration machinery as provided in the Manuals.

2.   Lessee shall notify Lessor of any accident or breakdown of any container on lease requiring major renovation or repair work. In such event, Lessor is permitted to have its designated parties inspect the damage and consult with Lessee as to the manner in which the necessary work is to be performed.

3.   Use of Spare Parts:

In particular with regard to the refrigeration machinery, only spare parts approved and recommended by the refrigeration machinery manufacturer in The Manuals should be used. Any improper parts used will be replaced on redelivery at Lessee's expense. Similarly, parts and materials for the repair of the container should be identical to the original manufacturer parts and materials. Improper repairs noted on redelivery will be corrected for the account of Lessee.

B.   **Assessment of Damage**:

1.   Upon redelivery of containers, damage repair costs for the account of Lessee will be assessed in accordance with the guidelines of IICL Refrigerated Container Manual and The Manuals.

2.   Deterioration which would have been prevented by routine washing, routine lubrication, or other normal repair or maintenance in accordance with the IICL Refrigerated Container Manual and The Manuals, shall not constitute normal wear and tear, including but not limited to, deterioration affecting security, water tightness, weatherproof qualities, mechanical and/or electrical function of integral components, the integrity of design or structure, or regulatory, classification or certification requirements as applicable, or affecting the inside or outside dimensions or cubic content of any container, whether or not such changes add thereto or subtract therefrom, or changes which may threaten the safety of persons or property, and Lessee shall be liable therefor.

Accepted and Agreed

Lessor (initial)

Lessee (initial)

05\BNC70_LT.DOC

Ref. Code: BNC 70
Dated: March 1, 2005
Page: 6

## IV.    OTHER CONDITIONS

### C.    **Off-Hire and Repair Approval Procedures**:

1.    Containers redelivered in undamaged condition shall be off-hired on the date of physical redelivery to a designated Lessor depot.

2.    Containers redelivered in damaged condition shall be off-hired on the date full repair approval is received by Lessor or Lessor's agent.   For each container redelivered in damaged condition, Lessor or its agent shall send a repair estimate to Lessee or its local agent, normally within five (5) working days of physical redelivery.  Lessee or its local agent must approve the repair estimate, in writing, or request a joint inspection of the container within five (5) working days of receipt of the repair estimate.

In the event of dispute of the repair estimate, a mutually acceptable surveyor shall be appointed whose survey and decision shall be final and binding on both parties. The party found liable by such survey shall pay in full for the survey and any attendant handling charges.  If both parties are found to be liable, then the survey and any attendant handling charges will be shared equally.

Damage repair costs will be billed to Lessee or its local agent as designated by Lessee and are due for payment within thirty (30) days of date of such invoices.

### D.    **Financial Reports**:

Within sixty (60) days after the close of each of the first three quarters of Lessee's fiscal year, Lessee shall deliver to Lessor a copy of Lessee's unaudited balance sheet and statement of income, a statement of retained earnings and a statement of cash flow as of the close of such quarter, including a comparison of the prior year, and the notes thereto. Within 120 days after the close of Lessee's fiscal year, Lessee shall deliver to Lessor an audited balance sheet and statement of income, a statement of retained earnings and a statement of cash flow as of the close of such fiscal year, including a comparison of the prior year, and the notes thereto.

Accepted and Agreed

Lessor (initial)

Lessee (initial)

05\BNC70_LT.DOC

Ref. Code: BNC 70
Dated: March 1, 2005
Page: 7

## V.    EXPIRATION SCHEDULE

This Agreement expires April 30, 2010.  A period of three (3) months is granted from the date of expiration of this Agreement during which time the containers on lease are to be redelivered (the "Build Down Period").   Commencing with the Build Down Period, Lessee shall be invoiced monthly in arrears. If any containers remain on lease after the Build Down Period, Lessee shall be invoiced at the following rate ("Post Build Down Rate") until each container is redelivered:

| Equipment Type | Per Day Per Container |
|---|---|
| 40' high cube refrigerated container | USD 21.00 |

However, should Lessor terminate the Agreement due to Lessee's default, the Post Build Down Rate shall become effective on the date of termination notice and Lessee shall no longer be in possession of the containers with Lessor's consent.   All other terms of this Agreement shall remain in full force until all containers have been redelivered and Lessee has fulfilled all of its obligations under this Agreement.

Accepted and Agreed

Lessor (initial)

Lessee (initial)

05\BNC70_LT.DOC

**TRITON**
**BUSINESS CONDITIONS**

1.  **DELIVERY OF CONTAINERS**

        Lessee acknowledges receipt of the containers leased hereunder in good condition as evidenced conclusively by its execution of the equipment interchange prescribed by Lessor. These business conditions shall apply to all Triton containers.

2.  **RENTAL AND OTHER CHARGES**

        a.    Lessee agrees to pay rent as set forth in this Agreement for all containers described thereon from the day a container is delivered and/or interchanged to Lessee up to and including the day such container is off-hired.

        b.    All payments due Lessor shall be paid in United States Dollars (unless other currency is indicated in this Agreement) within fifteen (15) days of the date of Lessor's invoice, to Lessor at the address in this Agreement. Lessee shall pay the invoiced amount, without deduction or offsets. Disputes, if any, shall accompany full payment. Lessor and Lessee acknowledge that timely payment at such address will be performance of Lessee's obligations under this Agreement and the address specified in this Agreement will be the place of performance of this Agreement. If Lessor's invoice is not paid when due, Lessor may, without prejudice to any other remedy it may have, charge, as additional rental, a service charge at the rate of eighteen (18) percent per annum on the unpaid balance.

3.  **RETURN OF CONTAINERS AND RISK OF DAMAGE AND LOSS**

        a.    Lessee shall return all containers to Lessor's depot(s) in the locations designated in this Agreement or in the event Lessor so designates to another terminal within the same port area.

        b.    Lessee is liable to Lessor for all damage to or loss or destruction of the containers subsequent to delivery and prior to return to Lessor except that caused by normal wear and deterioration. Normal wear and deterioration shall not include damage by forklifts or other handling equipment or changes, which could have been prevented by normal maintenance.

        i. **DAMAGE.** If Lessee fails to repair a damaged container prior to returning it to Lessor, Lessor will present a repair estimate to Lessee's local agent for authorization and no container will be repaired until authorization is given to Lessor. Lessee shall be liable to Lessor for the cost of such repair and for the rental charges, which shall continue until the day on which such damaged container has been repaired and is fit for subsequent rental. Provided, however, Lessee shall be responsible for and shall arrange for the decontamination and cleaning of any container (a "Hazmat Container") contaminated with or containing a hazardous substance, waste or residue (whether discovered upon or after return of the Hazmat Container), including arranging for the disposal of any hazardous substance, waste, or residue or other material that may be generated by the decontamination and cleaning of a Hazmat Container. Any Hazmat Container shall remain on-hire until completely decontaminated and cleaned by Lessee. Should Lessee fail to fully decontaminate and clean a Hazmat Container within a reasonable time not to exceed thirty (30) days after it has become contaminated, Lessor may declare the Hazmat Container a constructive total loss, in which case title to the Hazmat Container shall pass to Lessee, effective at 12:01 am upon the date of its contamination and Lessee shall pay the replacement value for the Hazmat Container. Lessee shall be responsible for and shall pay for the disposal of any Hazmat Container that Lessor has declared a constructive total loss. In its sole discretion, Lessor may elect to dispose of such a container. If Lessor does so, Lessee shall on demand pay to Lessor all costs Lessor incurs in doing so.

        ii. **LOSS OR TOTAL DAMAGE.** In the event of loss, theft, destruction of any container or damage thereto which Lessor, in its sole discretion, shall determine is not repairable, rental charges shall terminate upon receipt by Lessor of written notice, provided payment of the replacement value for such container as stated in this Agreement is made to Lessor within thirty (30) days of such notice. If payment is not made within thirty (30) days, rental charges shall continue unabated until Lessor receives such payment. Payments by Lessee shall not be applied to charges for the replacement value of containers unless so specified by Lessee.

4.  **FORCE MAJEURE**

        LESSEE'S OBLIGATIONS UNDER THIS AGREEMENT ARE ABSOLUTE AND SHALL NOT BE AFFECTED BY ANY CIRCUMSTANCE OR EVENT BEYOND LESSEE'S CONTROL, OF WHATEVER NATURE, INCLUDING, BUT NOT LIMITED TO FIRE, STORM, FLOOD, EARTHQUAKE, EXPLOSION, ACCIDENTS, ACTS OF THE PUBLIC ENEMY, SABOTAGE, RIOTS, CIVIL DISORDER, INSURRECTION, WAR, STRIKES, LOCKOUTS, LABOR DISPUTES, LABOR SHORTAGE, WORK STOPPAGES, TRANSPORTATION EMBARGOES OR DELAYS, FAILURE OR SHORTAGE OF MATERIAL, EQUIPMENT, FUEL, ELECTRICITY OR OTHER SUPPLIES, FAILURE OF SUPPLIERS TO DELIVER AS REQUESTED, FAILURE OF REPAIR FACILITIES TO FINISH REPAIRS, ACTS OF GOD, AND ACTS, ORDERS, DIRECTIONS, OR REGULATIONS OR PRIORITIES OF ANY GOVERNMENT OR ITS BRANCHES OR AGENCIES. LESSEE HEREBY WAIVES ANY AND ALL RIGHTS IT MAY HAVE UNDER ANY STATUTE, LAW OR TREATY LIMITING LESSEE'S LIABILITY OR THE LIABILITY OF ANY VESSEL ON WHICH THE LEASED CONTAINERS ARE USED OR ANY PERSON HAVING AN INTEREST IN ANY SUCH VESSEL, INCLUDING, WITHOUT LIMITATION, ANY AND ALL RIGHTS UNDER THE AMERICAN LIMITATION OF SHIPOWNERS' LIABILITY ACT, 46 U.S.C. §181 et seq. AND THE BRUSSELS CONVENTION ON LIMITATION OF LIABILITY OF 1923 AND ANY SUBSEQUENT REVISION THEREOF.

5.  **OPERATION, MAINTENANCE AND REPAIR**

        a.    Lessee shall, at its sole cost and expense, maintain the containers in good repair and safe operating condition. All maintenance, repair and replacement materials used shall meet or exceed minimum acceptable standards as set forth by the Institute of International Container Lessors effective at the time the repairs or maintenance are performed. In addition to its other obligations under this Section, Lessee shall perform preventive maintenance on each container as necessary, but no less than once in each period of twelve months from pick-up.

        b.    Receipt or delivery of containers or any other act by an agent or employee of or independent contractor engaged by Lessee shall be deemed to be the act of Lessee and be binding upon Lessee.

        c.    Lessor's containers are identified by appropriate lettering and numbering, which Lessee agrees not to change or obliterate, except that at the written request of Lessor, Lessee may change or supplement such marks as Lessor shall request. Lessee may, however, add other markings as may be required, provided that the containers so marked when returned by Lessee to Lessor, shall be free of all such markings. If Lessee fails to remove such markings, Lessor may remove such markings for the account of Lessee.

d.        Lessee shall at its expense comply with all laws, regulations or orders including, without limitation, treaties, international conventions and agreements, customs, and laws and regulations of federal, state, foreign and local governments and agencies which in any way affect any container or its use, operation or storage, including, but not limited to, all laws relating to the environment, public health and safety, and the workplace.

e.        Lessee shall at its expense comply with all rules and practices of ports, depots, storage areas and transportation companies consistent with the other requirements of this Section 5.

f.        Lessee shall have no power to incur, and shall keep the containers free from charges, liens or encumbrances.

g.        Lessee agrees that the containers will only be used for the purpose of transporting goods in international transport.

h.        Lessee, and not Lessor, is responsible for ownership, control, and acceptance of the contents of any container, including any hazardous substance, waste, or residue which is carried in such container, and for arranging for the delivery destination of the container and its contents.

## 6.    DEFAULT, REMEDIES UPON DEFAULT

a.        Should Lessee (i) fail to pay any sum due under this Agreement within fifteen (15) days of the date of Lessor's invoice, (ii) fail to perform any other obligations under this Agreement, (iii) cease doing business as a going concern, become insolvent, commit an act of bankruptcy or become the subject of any proceeding under any bankruptcy act, or its counterpart under the law of any nation or territory outside the United States of America, (iv) fail to pay or perform any obligation in any other agreement with, instrument in favor of, or note payable to Lessor, (v) transfer substantially all of its assets or merge or consolidate with or be acquired by any other person or entity, without Lessor's prior written consent, (vi) during any calendar year without Lessor's prior written consent, sell, retire or issue new shares in a sufficient number that more than fifty (50%) percent of Lessee's shareholders have not held their shares for at least one year, (vii) without Lessor's prior written consent, change its chief executive officer or chief financial officer, (viii) without Lessor's prior written consent, change its board of directors so that a majority of the directors have not held their directorships for at least one year, or (ix) provide to Lessor any financial statement that is not true and correct in any material respect, then Lessor may without notice and without releasing Lessee of its obligations to Lessor, terminate this Agreement, declare the balance of the rental to be due and payable, and retake possession of the containers free of any claims of Lessee. Lessor may, in its sole discretion, waive a default by Lessee, but no waiver shall be construed to modify the terms of this Agreement, including these Business Conditions. In the event of termination, Lessee shall no longer be in possession of the containers with Lessor's consent and Lessee shall return the containers to Lessor at such place as Lessor shall direct. Lessee shall continue to pay rental charges for containers until the containers are (i) returned in as good condition as received, normal wear and deterioration excepted, (ii) repaired and fit for subsequent rental or (iii) settlement is made. Termination shall not relieve Lessee of any liabilities or obligations incurred prior to return, repair or settlement. Without limiting Lessee's indemnity obligations under Section 9 of these Business Conditions, should Lessor retake possession of all or any part of the containers, Lessee authorizes Lessor to take possession of any property in, on or attached to the containers that is not the property of Lessor, and without liability for its care or safekeeping, to place that property in storage at the risk and expense of Lessee. With regard to any container not returned to Lessor within thirty (30) days of termination, Lessee will then owe Lessor an amount equal to the full replacement value as provided for in the Agreement, without regard to depreciation, for any container that has not been redelivered.

b.        Lessee waives any and all rights it may have under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602, et seq., including, without limitation, any immunity Lessee may have from pre-judgment, seizure, arrest or attachment.

## 7.    EXCLUSION OF WARRANTIES

THE CONTAINERS ARE LEASED AS IS. NO CONDITION OR WARRANTY WHATSOEVER OF ANY KIND HAS BEEN GIVEN BY LESSOR, AND ALL CONDITIONS AND WARRANTIES WHETHER EXPRESSED OR IMPLIED, WHETHER IN RELATION TO THE FITNESS OF THE CONTAINERS FOR ANY PARTICULAR PURPOSE OR COUNTRY, OR WHETHER IN RELATION TO MERCHANTABILITY OR AS TO DESCRIPTION, STATE, QUALITY OR CONDITION OF THE CONTAINERS AT DELIVERY OR AT ANY OTHER TIME ARE HEREBY WAIVED, EXCLUDED AND EXTINGUISHED.

## 8.    NOTICES

All billings, payments and written notices from either party to the other shall be given to the address shown in this Agreement, or to such other address as may be designated in writing by either party to the other.

## 9.    INDEMNITY

a.        Lessee shall indemnify and hold Lessor harmless from all liability, damage, cost or expense (including, without limitation, expenses in defending any claim or suit such as attorney's fees, court costs and other expenses) arising out of, (i) any failure of Lessee to comply with its obligations under this Agreement; (ii) any claim whether private or governmental, for personal injury or death, and for loss of or damage to person, property, cargo or vessels arising out of or incident to the ownership, selection, possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery or return of the containers; (iii) any forfeiture, seizure, or impounding of, or claim of charge, lien or encumbrance on the containers; (iv) any activities or operations of Lessee, or any act or omission of Lessee; and/or (v) any actual or threatened release of or contamination by any hazardous substance, waste, or residue. Each party undertakes promptly to give notice to the other of claims against it or action against it with respect thereto and Lessee agrees not to settle any action without the consent of Lessor.

b.        Lessee shall maintain physical loss and damage, all risks, and third party liability insurance satisfactory to Lessor, provide copies of its certificates in respect thereof to Lessor, and upon request by Lessor, cause Lessor to be named as additional insured and direct loss payee thereon.

## 10.    SUBLEASING AND DIRECT INTERCHANGING

Lessee shall not have the right to assign this Agreement or to sublet, rent, directly interchange or otherwise hire out or part with possession of a container, to any other party without the prior written consent of Lessor. Except for direct interchanges, such consent of Lessor shall not operate to relieve Lessee of any of its obligations hereunder.

11. **TAXES AND GENERAL**

a.      Lessee shall pay, or, if Lessor, in its sole discretion elects to pay them, shall reimburse Lessor for, all taxes, duties, fees and other assessments of whatever nature, including, but not limited to, sales, use, gross receipts, gross income, personal property, ad valorem, franchise, value added, customs, excise, license, transfer and stamp taxes, together with any penalties, fines and interest thereon, imposed by any government or other authority (other than taxes on Lessor's net income if such net income taxes are not incurred solely as a result of Lessee's leasing or use of the containers) and all charges of whatever nature incurred in ports, depots, storage areas or otherwise which taxes, duties, fees, other assessments or charges result from the leasing, use, possession, storage, importation, exportation, location, repair, delivery or value of the containers or the making of any payment required to be made by Lessee under this Agreement.  In the event that any government or other authority shall compel Lessee to withhold any portion of any payments due to Lessor as taxes, duties, fees, other assessments or charges, Lessee shall (i) make the withholding and remit it to the appropriate government or other authority on a timely basis, and (ii) shall in addition pay such additional amounts to Lessor in order that Lessor shall receive an amount equal to the gross amount of payments Lessor would have received under this Agreement had no such withholding been applicable.

b.      The Attachments, including this Attachment of Business Conditions, and any other Attachment hereto, represent the entire Agreement between Lessor and Lessee and may be amended, modified or changed only by an agreement in writing between Lessor and Lessee.  If Lessee takes possession of or retains any of the containers provided hereunder after receipt of this Agreement, then this Agreement shall be effective and binding, whether or not signed by Lessee.  For purposes of creating a binding Lease Agreement or in determining the rights and obligations under such contract in any court of law, the parties acknowledge that a signature reproduced by either facsimile or photocopy shall have the same force and effect as an original signature and that the original and any such copies shall be deemed one and the same document.

c.      This Attachment of Business Conditions shall be incorporated into the Agreement between Lessor and Lessee.  If this Attachment of Business Conditions conflicts with any other Attachment to the Agreement, the other Attachment shall prevail.

d.      This Agreement and any rights and liabilities arising out of or relating to this Agreement shall be governed by the laws in effect in California.  Lessor may require that any dispute or proceeding arising out of or relating to this Agreement shall, at Lessor's sole option and discretion, be brought only in state or federal courts having jurisdiction over the City and County of San Francisco or before the American Arbitration Association in San Francisco.  Lessee consents to jurisdiction and venue in those courts.  Lessee agrees to pay Lessor's costs and attorneys' fees in any action brought to enforce any of the provisions of this Agreement or any right granted to Lessor hereunder.

e.      Lessee acknowledges that the containers furnished to it under this Agreement are leased in contemplation of use on vessels owned and/or operated and/or chartered and/or managed by Lessee and for the prosecution of voyages thereon, and that any container furnished to it hereunder is also furnished to the vessel on which the container is used.  Lessee may use the container on more than one vessel owned, operated, chartered or managed by Lessee, and agrees that each time such a container is used in connection with the operation of a vessel, Lessor is furnishing such container to Lessee and the vessel anew and that Lessor is relying on the credit of the vessel in furnishing the container.  Lessee agrees to maintain records reflecting the vessels and voyages upon which the containers furnished under this Agreement are used and shall make such records available to Lessor upon reasonable demand by Lessor.  Lessee agrees to notify Lessor in the event that containers furnished under this Agreement are used for a purpose other than in connection with the operation of vessels (which operation may include incidental use on land) and the prosecution of voyages thereon.  Lessee warrants that it is authorized to enter into this Agreement on behalf of any and all vessels owned and/or operated and/or chartered and/or managed by Lessee.

f.      Should Lessee fail to return containers upon termination of this Agreement, Lessee agrees that all of its obligations (including, without limitation, the obligation to pay rent) to Lessor under this Agreement shall continue in effect until all containers leased under this Agreement have been returned to Lessor.

g.      Lessee acknowledges that Lessor is a Bermuda corporation.  Certain of the containers subject to this agreement may be owned by third parties other than the named Lessor, including containers sold by the named Lessor to Triton Container Finance LLC, Triton Container Funding LLC or TCF 2004 LLC.

h.      This Agreement is binding upon the parties, their successors and assigns.  The provisions of this Agreement are separable and any provisions found upon judicial interpretation or construction to be prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions.

i.      Provided Lessee complies with all of the terms and conditions of the Agreement, Lessee shall have quiet possession of the containers.

Accepted and Agreed:

| LESSOR | Triton Container International Limited | | LESSEE | C.I. Banacol S.A. |
| --- | --- | --- | --- | --- |
| Signature | _[signature]_ | | Signature | _[signature]_ |
| Printed Name | Susan Morrison | | Printed Name | |
| Title | Vice President Business Information Group | | Title | |
| Date | MAY 1 8 2005 | | Date | |
| | | | | The signatory warrants authority to sign on Lessee's behalf |

CERTAIN PROCEEDS OF THIS LEASE ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF ONE OR MORE FINANCIAL INSTITUTIONS WHICH HAS BEEN PERFECTED BY FILING FINANCING STATEMENTS UNDER THE UNIFORM COMMERCIAL CODE AGAINST THE APPLICABLE DEBTOR.  A PURCHASE OF OR A SECURITY INTEREST IN THIS DOCUMENT WILL VIOLATE THE RIGHTS OF THE OWNERS, PURCHASERS OR SECURED PARTIES NAMED IN SUCH FINANCING STATEMENT.

COUNTERPART NO. _1_ OF _31_ SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS.  TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE IN EFFECT IN ANY APPLICABLE JURISDICTION, NO SECURITY INTEREST IN THIS DOCUMENT MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment A1

## TRIU 883430-883489

### BOX SPECIFICATIONS

**General**

| | |
|---|---|
| **Box builder:** | MCI |
| **Max gross weight:** | 34000 kg |
| **Tare weight** *(incl. machinery)*: | 4630 kg |
| **Max payload:** | 29370 kg |
| **Max heat leakage:** | 34.0 kcal/hr/c |
| **Max air leakage @ 25 mm SWG:** | <3 m³/hr |
| **Internal length:** | 11585 mm |
| **Internal width:** | 2290 mm |
| **Internal height:** | 2544 mm |
| **Cubic capacity:** | 67.5 m³ |
| **Net cubic capacity** *(below load line)*: | 64.8 m³ |
| **Height to load line:** | 2444 mm |
| **Door opening height:** | 2572 mm |
| **Door opening width:** | 2290 mm |

**Exterior Construction**

| | |
|---|---|
| **Exterior Cladding:** | Steel |
| **Front and rear frame:** | Corten, hot zinc sprayed + paint |
| **Roof panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Side panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Top rails:** | Steel, hot zinc sprayed + paint |
| **Bottom rails:** | Steel, hot zinc sprayed + paint |
| **Doors:** | HGSS + paint |
| **Underfloor:** | Corrugated - MGSS |
| **Underfloor crossmembers:** | non applicable |
| **Paint on steel parts:** | All steel panels have Marine Protective paint system |
| **Genset receptacles:** | Receptacles for clip-on diesel generators |

**Interior Construction**

| | |
|---|---|
| **Roof lining:** | Alu, 0.8mm |
| **Side lining:** | Stainless steel, with battens, 0.7mm |
| **Door lining:** | Stainless steel, with battens, 0.7mm |
| **Floor:** | Alu T floor, 63.5mm |
| **Drains:** | 2 at front, 2 at rear |
| **Insulation:** | Polyurethane foam |
| **Insulation blowing agent:** | 100% R141b |

**Tests**

| | |
|---|---|
| **Airflow and ventilation rate:** | ATO-DLO (Sprenger) approved |

*Container is fully tested in accordance with ISO requirements:*
 *- Max Gross Weight of 30,480 kgs*
 *- Sidepanel test is 0.6 P*
 *- Floor test is ISO plus 33%*




Ref. Code: BNC 70
Dated: March 1, 2005
Attachment A2

## TRIU 883430-883489

| MACHINERY SPECIFICATIONS |
|---|

**General**

| | |
|---|---|
| **Machinery manufacturer:** | Carrier |
| **Cooling unit model:** | 69NT40-541-005 |
| **Refrigerant:** | R134a |
| **Microprocessor:** | Microlink 3 |
| **Internal depth:** | 414 mm |
| **Unit weight:** | 535 kg |
| **Power requirements:** | Single Voltage 360/460 V, 50/60 Hz, 3 phase |

| **Power draw (cooling):** | Return air | kcal/hr | Power KW |
|---|---|---|---|
| *(Based on 38°C ambient and 60Hz* | -18°C | 4500 - 5400 | 6.1 - 8.2 |
| *power supply)* | +2°C | 8000 - 11000 | 9.1 - 11.0 |

| | |
|---|---|
| **Heating capacity:** | 4500 kcal/hr |
| **Evaporator air flow:** | High speed: 5437 m³/hr |
| | Low speed: 2380 m³/hr |
| **Fresh air renewal:** | 0 - 180 m³/hr |
| **Noise level:** | 78 db (A) |

**Machinery Options**

| | |
|---|---|
| **Water cooled condenser:** | Not included |
| **Temperature recorder:** | Not included |
| **Datacorder:** | Integral |
| **Power Up rechargeable battery:** | Included |
| **RMU – Power line modem:** | Not included |
| **4 pin monitoring receptacle:** | Not included |
| **USDA receptacles:** | Included |
| **De-humidification:** | Not included |
| **Transducers – pressure sensitive:** | Not included |
| **Controlled atmosphere:** | Provision for Transfresh included |

**Machinery Remarks**

| | |
|---|---|
| **Condenser coil:** | High capacity |



**EXHIBIT B**

Ref. Code: BNC 70
Dated: March 1, 2005

AMENDMENT NUMBER ONE
to the Long Term Lease Agreement between
Triton Container International Limited ("Lessor")
and
C.I. Banacol S.A. ("Lessee")
dated March 1, 2005, referenced BNC 70 (the "Agreement")

1.   Effective February 1, 2006, a total of 20 x 40' high cube refrigerated containers shall be added to this Agreement and shall be covered under Lag 200000. The containers under Lag 200000 shall be subject to all terms and conditions of the Agreement, except to the extent they are modified by this Amendment Number One.

I.B.   **Lease Term**:

A Build Up Period of two (2) months is granted starting February 1, 2006. Billing shall commence for each container on the date of pick up or April 1, 2006, whichever occurs first. Each container shall remain on lease under this Agreement for a minimum period of five (5) years commencing April 1, 2006, the Lease Term Commencement Date.

II.A.   **Delivery**:

1.   Type, Quantity and Supply of Equipment:

a.   A total of 20 x new 40' high cube refrigerated containers, from Series Numbers TRIU 8385679 – 8385998 as specified per Attachment B1, will be supplied to Lessee under this Agreement. Such containers will be made available ex Lessor's designated depot location in Puerto Limon during the Build Up Period. Such containers are listed in Exhibit A attached to this Agreement.

b.   Refrigeration Machinery is Carrier 69NT40-541-005 Thinline 511/Microlink 3 as per Attachment B2.

2.   Lessor is held harmless for any delays in delivery or availability of equipment which are caused by circumstances beyond Lessor's control.

II.B.   **Redelivery**:

1.   Any redelivery is subject to ninety (90) days prior written notice by Lessee to Lessor.

2.   Redelivery Schedule:

After expiration of the minimum period, Lessee may redeliver containers at Lessee's expense to Lessor's designated depots in the following ports and subject to the maximum monthly port redelivery quantities shown below:

| Port | Abbreviation | Maximum Monthly Port Redelivery Quantity |
|------|-------------|------------------------------------------|
| Guayaquil | GYE | 4 |
| Puerto Limon | LIO | 4 |

3.   Unused port redelivery quantities shall not carry over from one month to the next.

4.   Lessor may designate replacement or additional depots in a port. If any depot Lessor has designated in a port refuses or restricts return of containers, Lessor may, by written notice to Lessee, immediately delete that port from the Redelivery Schedule.

5.   The parties may agree upon different redelivery ports in writing. Otherwise, Lessee may only redeliver according to the above schedule.

6.   Lessor may amend the amounts and ports in the above redelivery schedule by sixty (60) days prior written notice to Lessee.

Ref. Code: BNC 70
Dated: March 1, 2005

AMENDMENT NUMBER ONE
(continued)

V.    EXPIRATION SCHEDULE

This Agreement expires March 31, 2011 with respect to containers on lease under Lag 200000. A period of three (3) months is granted from the date of expiration of this Agreement during which time the containers on lease are to be redelivered (the "Build Down Period"). Commencing with the Build Down Period, Lessee shall be invoiced monthly in arrears. If any containers remain on lease after the Build Down Period, Lessee shall be invoiced at the following rate ("Post Build Down Rate") until each container is redelivered:

| Equipment Type | Per Day Per Container |
|---|---|
| 40' high cube refrigerated container | USD 21.00 |

However, should Lessor terminate this Agreement due to Lessee's default, the Post Build Down Rate shall become effective on the date of termination notice and lessee shall no longer be in possession of the containers with Lessor's consent. All other terms of this Agreement shall remain in full force until all containers have been redelivered and Lessee has fulfilled all of its obligations under this Agreement.

2.    Effective April 1, 2006, a total of 58 x 40' high cube refrigerated containers shall be added to this Agreement and shall be covered under Lag 300000. The containers under Lag 300000 shall be subject to all terms and conditions of the Agreement, except to the extent they are modified by this Amendment Number One.

I.B.    **Lease Term**:

A Build Up Period of two (2) months is granted starting April 1, 2006. Billing shall commence for each container on the date of pick up or June 1, 2006, whichever occurs first. Each container shall remain on lease under this Agreement for a minimum period of five (5) years commencing June 1, 2006, the Lease Term Commencement Date.

II.A.    **Delivery**:

1.    Type, Quantity and Supply of Equipment:

a.    A total of 58 x new 40' high cube refrigerated containers, from Series Numbers TRIU 8373256- 8373549 as specified per Attachment C1 and from Series Numbers TRIU 8382005 – 8382453 as specified per Attachment D1, will be supplied to Lessee under this Agreement. Such containers will be made available ex Lessor's designated depot location in Guayaquil during the Build Up Period. Such containers are listed in Exhibit A attached to this Agreement.

b.    Refrigeration Machinery is Carrier 69NT40-541-302 and Carrier 69NT40-541-006 as per Attachment C2 and D2, respectively.

2.    Lessor is held harmless for any delays in delivery or availability of equipment which are caused by circumstances beyond Lessor's control.

Ref. Code: BNC 70
Dated: March 1, 2005

AMENDMENT NUMBER ONE
(continued)

II.B.   **Redelivery:**

1.      Any redelivery is subject to ninety (90) days prior written notice by Lessee to Lessor.

2.      Redelivery Schedule:

        After expiration of the minimum period, Lessee may redeliver containers at Lessee's expense to Lessor's designated depots in the following ports and subject to the maximum monthly port redelivery quantities shown below:

| Port | Abbreviation | Maximum Monthly Port Redelivery Quantity |
|------|--------------|------------------------------------------|
| Guayaquil | GYE | 20 |
| Puerto Limon | LIO | 20 |

3.      Unused port redelivery quantities shall not carry over from one month to the next.

4.      Lessor may designate replacement or additional depots in a port.  If any depot Lessor has designated in a port refuses or restricts return of containers, Lessor may, by written notice to Lessee, immediately delete that port from the Redelivery Schedule.

5.      The parties may agree upon different redelivery ports in writing.  Otherwise, Lessee may only redeliver according to the above schedule.

6.      Lessor may amend the amounts and ports in the above redelivery schedule by sixty (60) days prior written notice to Lessee.

V.      <u>EXPIRATION SCHEDULE</u>

        This Agreement expires May 31, 2011 with respect to containers on lease under Lag 300000.  A period of three (3) months is granted from the date of expiration of this Agreement during which time the containers on lease are to be redelivered (the "Build Down Period").  Commencing with the Build Down Period, Lessee shall be invoiced monthly in arrears.  If any containers remain on lease after the Build Down Period, Lessee shall be invoiced at the following rate ("Post Build Down Rate"):

| Equipment Type | Per Day Per Container |
|----------------|-----------------------|
| 40' high cube refrigerated container | USD 21.00 |

        However, should Lessor terminate this Agreement due to Lessee's default, the Post Build Down Rate shall become effective on the date of termination notice and lessee shall no longer be in possession of the containers with Lessor's consent.  All other terms of this Agreement shall remain in full force until all containers have been redelivered and Lessee has fulfilled all of its obligations under this Agreement.

3.      Containers leased out to Lessee under this Agreement prior to February 1, 2006 shall be covered under BNC 70, Lag 100000.

4.      The billing reference to Mr. Ramon Miyar shall be deleted from the Agreement.

5.      The Business Conditions shall be deleted in their entirety and replaced with the attached set of Business Conditions.

Ref. Code: BNC 70
Dated: March 1, 2005

AMENDMENT NUMBER ONE
(continued)

All other terms and conditions shall be in accordance with the Agreement.

All terms of the Agreement, as amended, shall remain in full force until all containers have been redelivered and Lessee has fulfilled all of its obligations under the Agreement.

Accepted and Agreed

Triton Container International Limited                    C.I. Banacol S.A.

LESSOR                                                    LESSEE

By: _____                    By: _____

Printed Name: __Susan Morrison__                 Printed Name: _____

Title: __Vice President__
       __Business Information Group__            Title: _____

Date: _____OCT 1 9 2007_____                  Date: _____

The signatory warrants authority to sign on Lessee's behalf

CERTAIN PROCEEDS OF THIS LEASE ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF ONE OR MORE FINANCIAL INSTITUTIONS WHICH HAS BEEN PERFECTED BY FILING FINANCING STATEMENTS UNDER THE UNIFORM COMMERCIAL CODE AGAINST THE APPLICABLE DEBTOR. A PURCHASE OF OR A SECURITY INTEREST IN THIS DOCUMENT WILL VIOLATE THE RIGHTS OF THE OWNERS, PURCHASERS OR SECURED PARTIES NAMED IN SUCH FINANCING STATEMENTS.

COUNTERPART NO. ___1___ OF [3] SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE IN EFFECT IN ANY APPLICABLE JURISDICTION, NO SECURITY INTEREST IN THIS DOCUMENT MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

O6\BNC70_LTL_A1.DOC

Ref. Code:  BNC 70
Exhibit A

| Lag 200000 | Lag 300000 | |
| --- | --- | --- |
| 20 x 40' High Cube Refrigerated Containers | 58 x 40' High Cube Refrigerated Containers | |
| TRIU8385679 | TRIU8373256 | TRIU8382242 |
| TRIU8385811 | TRIU8373261 | TRIU8382263 |
| TRIU8385827 | TRIU8373277 | TRIU8382290 |
| TRIU8385832 | TRIU8373282 | TRIU8382319 |
| TRIU8385848 | TRIU8373298 | TRIU8382345 |
| TRIU8385853 | TRIU8373301 | TRIU8382350 |
| TRIU8385869 | TRIU8373317 | TRIU8382366 |
| TRIU8385874 | TRIU8373322 | TRIU8382371 |
| TRIU8385880 | TRIU8373338 | TRIU8382387 |
| TRIU8385895 | TRIU8373343 | TRIU8382392 |
| TRIU8385909 | TRIU8373359 | TRIU8382411 |
| TRIU8385914 | TRIU8373364 | TRIU8382427 |
| TRIU8385920 | TRIU8373370 | TRIU8382448 |
| TRIU8385935 | TRIU8373385 | TRIU8382453 |
| TRIU8385940 | TRIU8373390 | |
| TRIU8385956 | TRIU8373404 | |
| TRIU8385961 | TRIU8373410 | |
| TRIU8385977 | TRIU8373425 | |
| TRIU8385982 | TRIU8373430 | |
| TRIU8385998 | TRIU8373446 | |
| | TRIU8373451 | |
| | TRIU8373467 | |
| | TRIU8373472 | |
| | TRIU8373488 | |
| | TRIU8373493 | |
| | TRIU8373507 | |
| | TRIU8373512 | |
| | TRIU8373528 | |
| | TRIU8373533 | |
| | TRIU8373549 | |
| | TRIU8382005 | |
| | TRIU8382031 | |
| | TRIU8382047 | |
| | TRIU8382052 | |
| | TRIU8382094 | |
| | TRIU8382108 | |
| | TRIU8382113 | |
| | TRIU8382129 | |
| | TRIU8382134 | |
| | TRIU8382140 | |
| | TRIU8382181 | |
| | TRIU8382200 | |
| | TRIU8382216 | |
| | TRIU8382237 | |

**TRITON**
**BUSINESS CONDITIONS**

**1.    DELIVERY OF CONTAINERS**

Lessee acknowledges receipt of the containers leased hereunder in good condition as evidenced conclusively by its execution of the equipment interchange prescribed by Lessor. These business conditions shall apply to all Triton containers.

**2.    RENTAL AND OTHER CHARGES**

a.    Lessee agrees to pay rent as set forth in this Agreement for all containers described thereon from the day a container is delivered and/or interchanged to Lessee up to and including the day such container is off-hired.

b.    All payments due Lessor shall be paid in United States Dollars (unless other currency is indicated in this Agreement) within fifteen (15) days of the date of Lessor's invoice, to Lessor at the address in this Agreement. Lessee shall pay the invoiced amount, without deduction or offsets. Disputes, if any, shall accompany full payment. Lessor and Lessee acknowledge that timely payment at such address will be performance of Lessee's obligations under this Agreement and the address specified in this Agreement will be the place of performance of this Agreement. If Lessor's invoice is not paid when due, Lessor may, without prejudice to any other remedy it may have, charge, as additional rental, a service charge at the rate of eighteen (18) percent per annum on the unpaid balance.

**3.    RETURN OF CONTAINERS AND RISK OF DAMAGE AND LOSS**

a.    Lessee shall return all containers to Lessor's depot(s) in the locations designated in this Agreement or in the event Lessor so designates to another terminal within the same port area.

b.    Lessee is liable to Lessor for all damage to or loss or destruction of the containers subsequent to delivery and prior to return to Lessor except that caused by normal wear and deterioration. Normal wear and deterioration shall not include damage by forklifts or other handling equipment or changes, which could have been prevented by normal maintenance.

i. DAMAGE.  If Lessee fails to repair a damaged container prior to returning it to Lessor, Lessor will present a repair estimate to Lessee's local agent for authorization and no container will be repaired until authorization is given to Lessor. Lessee shall be liable to Lessor for the cost of such repair and for the rental charges, which shall continue until the day on which such damaged container has been repaired and is fit for subsequent rental. Provided, however, Lessee shall be responsible for and shall arrange for the decontamination and cleaning of any container (a "Hazmat Container") contaminated with or containing a hazardous substance, waste or residue (whether discovered upon or after return of the Hazmat Container), including arranging for the disposal of any hazardous substance, waste, or residue or other material that may be generated by the decontamination and cleaning of a Hazmat Container. Any Hazmat Container shall remain on-hire until completely decontaminated and cleaned by Lessee. Should Lessee fail to fully decontaminate and clean a Hazmat Container within a reasonable time not to exceed thirty (30) days after it has become contaminated, Lessor may declare the Hazmat Container a constructive total loss, in which case title to the Hazmat Container shall pass to Lessee, effective at 12:01 am upon the date of its contamination and Lessee shall pay the replacement value for the Hazmat Container. Lessee shall be responsible for and shall pay for the disposal of any Hazmat Container that Lessor has declared a constructive total loss. In its sole discretion, Lessor may elect to dispose of such a container. If Lessor does so, Lessee shall on demand pay to Lessor all costs Lessor incurs in doing so.

ii. LOSS OR TOTAL DAMAGE.  In the event of loss, theft, destruction of any container or damage thereto which Lessor, in its sole discretion, shall determine is not repairable, rental charges shall terminate upon receipt by Lessor of written notice, provided payment of the replacement value for such container as stated in this Agreement is made to Lessor within thirty (30) days of such notice. If payment is not made within thirty (30) days, rental charges shall continue unabated until Lessor receives such payment. Payments by Lessee shall not be applied to charges for the replacement value of containers unless so specified by Lessee.

**4.    FORCE MAJEURE**

LESSEE'S OBLIGATIONS UNDER THIS AGREEMENT ARE ABSOLUTE AND SHALL NOT BE AFFECTED BY ANY CIRCUMSTANCE OR EVENT BEYOND LESSEE'S CONTROL, OF WHATEVER NATURE, INCLUDING, BUT NOT LIMITED TO FIRE, STORM, FLOOD, EARTHQUAKE, EXPLOSION, ACCIDENTS, ACTS OF THE PUBLIC ENEMY, SABOTAGE, RIOTS, CIVIL DISORDER, INSURRECTION, WAR, STRIKES, LOCKOUTS, LABOR DISPUTES, LABOR SHORTAGE, WORK STOPPAGES, TRANSPORTATION EMBARGOES OR DELAYS, FAILURE OR SHORTAGE OF MATERIAL, EQUIPMENT, FUEL, ELECTRICITY OR OTHER SUPPLIES, FAILURE OF SUPPLIERS TO DELIVER AS REQUESTED, FAILURE OF REPAIR FACILITIES TO FINISH REPAIRS, ACTS OF GOD, AND ACTS, ORDERS, DIRECTIONS, OR REGULATIONS OR PRIORITIES OF ANY GOVERNMENT OR ITS BRANCHES OR AGENCIES. LESSEE HEREBY WAIVES ANY AND ALL RIGHTS IT MAY HAVE UNDER ANY STATUTE, LAW OR TREATY LIMITING LESSEE'S LIABILITY OR THE LIABILITY OF ANY VESSEL ON WHICH THE LEASED CONTAINERS ARE USED OR ANY PERSON HAVING AN INTEREST IN ANY SUCH VESSEL, INCLUDING, WITHOUT LIMITATION, ANY AND ALL RIGHTS UNDER THE AMERICAN LIMITATION OF SHIPOWNERS' LIABILITY ACT, 46 U.S.C. §181 et seq. AND THE BRUSSELS CONVENTION ON LIMITATION OF LIABILITY OF 1923 AND ANY SUBSEQUENT REVISION THEREOF.

**5.    OPERATION, MAINTENANCE AND REPAIR**

a.    Lessee shall, at its sole cost and expense, maintain the containers in good repair and safe operating condition. All maintenance, repair and replacement materials used shall meet or exceed minimum acceptable standards as set forth by the Institute of International Container Lessors effective at the time the repairs or maintenance are performed. In addition to its other obligations under this Section, Lessee shall perform preventive maintenance on each container as necessary, but not less than once in each period of twelve months from pick-up.

b.    Receipt or delivery of containers or any other act by an agent or employee of or independent contractor engaged by Lessee shall be deemed to be the act of Lessee and be binding upon Lessee.

c.    Lessor's containers are identified by appropriate lettering and numbering, which Lessee agrees not to change or obliterate, except that at the written request of Lessor, Lessee may change or supplement such marks as Lessor shall request. Lessee may, however, add other markings as may be required, provided that the containers so marked when returned by Lessee to Lessor, shall be free of all such markings. If Lessee fails to remove such markings, Lessor may remove such markings for the account of Lessee.

d.      Lessee shall at its expense comply with all laws, regulations or orders including, without limitation, treaties, international conventions and agreements, customs, and laws and regulations of federal, state, foreign and local governments and agencies which in any way affect any container or its use, operation or storage, including, but not limited to, all laws relating to the environment, public health and safety, and the workplace.

e.      At delivery, the containers will be fitted with the plate the Convention for Safe Containers (the "CSC") requires. While the containers are on hire to Lessee, Lessor's Approved Continuous Examination Program shall not apply to the containers. Instead, Lessee shall comply with any requirement applicable to the containers under the CSC and the containers shall be subject to Lessee's Approved Continuous Examination Program.

f.      Lessee shall at its expense comply with all rules and practices of ports, depots, storage areas and transportation companies consistent with the other requirements of this Section 5.

g.      Lessee shall have no power to incur, and shall keep the containers free from charges, liens or encumbrances.

h.      Lessee agrees that the containers will only be used for the purpose of transporting goods in international transport.

i.      Lessee, and not Lessor, is responsible for ownership, control, and acceptance of the contents of any container, including any hazardous substance, waste, or residue which is carried in such container, and for arranging for the delivery destination of the container and its contents.

## 6.      DEFAULT, REMEDIES UPON DEFAULT

a.      Should Lessee (i) fail to pay any sum due under this Agreement within fifteen (15) days of the date of Lessor's invoice, (ii) fail to perform any other obligations under this Agreement, (iii) cease doing business as a going concern, become insolvent, commit an act of bankruptcy or become the subject of any proceeding under any bankruptcy act, or its counterpart under the law of any nation or territory outside the United States of America, (iv) fail to pay or perform any obligation in any other agreement with, instrument in favor of, or note payable to Lessor, (v) transfer substantially all of its assets or merge or consolidate with or be acquired by any other person or entity, without Lessor's prior written consent, (vi) during any calendar year without Lessor's prior written consent, sell, retire or issue new shares in a sufficient number that more than fifty (50%) percent of Lessee's shareholders have not held their shares for at least one year, (vii) without Lessor's prior written consent, change its chief executive officer or chief financial officer, (viii) without Lessor's prior written consent, change its board of directors so that a majority of the directors have not held their directorships for at least one year, (ix) be named on the list of Specially Designated Nationals and Blocked Persons maintained by the U.S. Department of the Treasury's Office of Foreign Assets Control available at http://www.treas.gov/offices/enforcement/ofac/sdn/index.html, or as otherwise published from time to time, or otherwise become the subject of U.S. sanctions laws, orders or regulations, or (x) provide to Lessor any financial statement that is not true and correct in any material respect, then Lessor may without notice and without releasing Lessee of its obligations to Lessor, terminate this Agreement, declare the balance of the rental to be due and payable, and retake possession of the containers free of any claims of Lessee. Lessor may, in its sole discretion, waive a default by Lessee, but no waiver shall be construed to modify the terms of this Agreement, including these Business Conditions. In the event of termination, Lessee shall no longer be in possession of the containers with Lessor's consent and Lessee shall return the containers to Lessor at such place as Lessor shall direct. Lessee shall continue to pay rental charges for containers until the containers are (i) returned in as good condition as received, normal wear and deterioration excepted, (ii) repaired and fit for subsequent rental or (iii) settlement is made. Termination shall not relieve Lessee of any liabilities or obligations incurred prior to return, repair or settlement. Without limiting Lessee's indemnity obligations under Section 9 of these Business Conditions, should Lessor retake possession of all or any part of the containers, Lessee authorizes Lessor to take possession of any property in, on or attached to the containers that is not the property of Lessor, and without liability for its care or safekeeping, to place that property in storage at the risk and expense of Lessee. With regard to any container not returned to Lessor within thirty (30) days of termination, Lessee will then owe Lessor an amount equal to the full replacement value as provided for in the Agreement, without regard to depreciation, for any container that has not been redelivered.

b.      Lessee waives any and all rights it may have under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602, et seq., including, without limitation, any immunity Lessee may have from pre-judgment, seizure, arrest or attachment.

## 7.      EXCLUSION OF WARRANTIES

THE CONTAINERS ARE LEASED AS IS.  NO CONDITION OR WARRANTY WHATSOEVER OF ANY KIND HAS BEEN GIVEN BY LESSOR, AND ALL CONDITIONS AND WARRANTIES WHETHER EXPRESSED OR IMPLIED, WHETHER IN RELATION TO THE FITNESS OF THE CONTAINERS FOR ANY PARTICULAR PURPOSE OR COUNTRY, OR WHETHER IN RELATION TO MERCHANTABILITY OR AS TO DESCRIPTION, STATE, QUALITY OR CONDITION OF THE CONTAINERS AT DELIVERY OR AT ANY OTHER TIME ARE HEREBY WAIVED, EXCLUDED AND EXTINGUISHED.

## 8.      NOTICES

All billings, payments and written notices from either party to the other shall be given to the address shown in this Agreement, or to such other address as may be designated in writing by either party to the other.

## 9.      INDEMNITY

a.      Lessee shall indemnify and hold Lessor harmless from all liability, damage, cost or expense (including, without limitation, expenses in defending any claim or suit such as attorney's fees, court costs and other expenses) arising out of, (i) any failure of Lessee to comply with its obligations under this Agreement; (ii) any claim whether private or governmental, for personal injury or death, and for loss of or damage to person, property, cargo or vessels arising out of or incident to the ownership, selection, possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery or return of the containers; (iii) any forfeiture, seizure, or impounding of, or claim of charge, lien or encumbrance on the containers; (iv) any activities or operations of Lessee, or any act or omission of Lessee; and/or (v) any actual or threatened release of or contamination by any hazardous substance, waste, or residue. Each party undertakes promptly to give notice to the other of claims against it or action against it with respect thereto and Lessee agrees not to settle any action without the consent of Lessor.

b.      Lessee shall maintain physical loss and damage, all risks, and third party liability insurance satisfactory to Lessor, provide copies of its certificates in respect thereof to Lessor, and upon request by Lessor, cause Lessor to be named as additional insured and direct loss payee thereon.

10.   **SUBLEASING AND DIRECT INTERCHANGING**

Lessee shall not have the right to assign this Agreement or to sublet, rent, directly interchange or otherwise hire out or part with possession of a container, to any other party without the prior written consent of Lessor. Except for direct interchanges, such consent of Lessor shall not operate to relieve Lessee of any of its obligations hereunder.

11.   **TAXES AND GENERAL**

a.      Lessee shall pay, or, if Lessor, in its sole discretion elects to pay them, shall reimburse Lessor for, all taxes, duties, fees and other assessments of whatever nature, including, but not limited to, sales, use, gross receipts, gross income, personal property, ad valorem, franchise, value added, customs, excise, license, transfer and stamp taxes, together with any penalties, fines and interest thereon, imposed by any government or other authority (other than taxes on Lessor's net income if such net income taxes are not incurred solely as a result of Lessee's leasing or use of the containers) and all charges of whatever nature incurred in ports, depots, storage areas or otherwise which taxes, duties, fees, other assessments or charges result from the leasing, use, possession, storage, importation, exportation, location, repair, delivery or value of the containers or the making of any payment required to be made by Lessee under this Agreement. In the event that any government or other authority shall compel Lessee to withhold any portion of any payments due to Lessor as taxes, duties, fees, other assessments or charges, Lessee shall (i) make the withholding and remit it to the appropriate government or other authority on a timely basis, and (ii) shall in addition pay such additional amounts to Lessor in order that Lessor shall receive an amount equal to the gross amount of payments Lessor would have received under this Agreement had no such withholding been applicable.

b.      The Attachments, including this Attachment of Business Conditions, and any other Attachment hereto, represent the entire Agreement between Lessor and Lessee and may be amended, modified or changed only by an agreement in writing between Lessor and Lessee. If Lessee takes possession of or retains any of the containers provided hereunder after receipt of this Agreement, then this Agreement shall be effective and binding, whether or not signed by Lessee. For purposes of creating a binding Lease Agreement or in determining the rights and obligations under such contract in any court of law, the parties acknowledge that a signature reproduced by either facsimile or photocopy shall have the same force and effect as an original signature and that the original and any such copies shall be deemed one and the same document.

c.      This Attachment of Business Conditions shall be incorporated into the Agreement between Lessor and Lessee. If this Attachment of Business Conditions conflicts with any other Attachment to the Agreement, the other Attachment shall prevail.

d.      This Agreement and any rights and liabilities arising out of or relating to this Agreement shall be governed by the laws in effect in California. Lessor may require that any dispute or proceeding arising out of or relating to this Agreement shall, at Lessor's sole option and discretion, be brought only in state or federal courts having jurisdiction over the City and County of San Francisco or before the American Arbitration Association in San Francisco. Lessee consents to jurisdiction and venue in those courts. Lessee agrees to pay Lessor's costs and attorneys' fees in any action brought to enforce any of the provisions of this Agreement or any right granted to Lessor hereunder.

e.      Lessee acknowledges that the containers furnished to it under this Agreement are leased in contemplation of use on vessels owned and/or operated and/or chartered and/or managed by Lessee and for the prosecution of voyages thereon, and that any container furnished to it hereunder is also furnished to the vessel on which the container is used. Lessee may use the container on more than one vessel owned, operated, chartered or managed by Lessee, and agrees that each time such a container is used in connection with the operation of a vessel, Lessor is furnishing such container to Lessee and the vessel anew and that Lessor is relying on the credit of the vessel in furnishing the container. Lessee agrees to maintain records reflecting the vessels and voyages upon which the containers furnished under this Agreement are used and shall make such records available to Lessor upon reasonable demand by Lessor. Lessee agrees to notify Lessor in the event that containers furnished under this Agreement are used for a purpose other than in connection with the operation of vessels (which operation may include incidental use on land) and the prosecution of voyages thereon. Lessee warrants that it is authorized to enter into this Agreement on behalf of any and all vessels owned and/or operated and/or chartered and/or managed by Lessee.

f.      Should Lessee fail to return containers upon termination of this Agreement, Lessee agrees that all of its obligations (including, without limitation, the obligation to pay rent) to Lessor under this Agreement shall continue in effect until all containers leased under this Agreement have been returned to Lessor.

g.      Lessee acknowledges that Lessor is a Bermuda corporation. Certain of the containers subject to this agreement may be owned by third parties other than the named Lessor, including containers sold by the named Lessor to Triton Container Finance LLC or TCF 2004 LLC.

h.      This Agreement is binding upon the parties, their successors and assigns. The provisions of this Agreement are separable. If, by judicial interpretation or construction, or if, by promulgation or administrative interpretation of any statute, executive order or regulation, any provision of this Agreement in Lessor's reasonable view becomes prohibited by law, the provision shall be ineffective to the extent of the prohibition without invalidating the remaining provisions of this Agreement.

i.      Provided Lessee complies with all of the terms and conditions of the Agreement, Lessee shall have quiet possession of the containers.

Accepted and Agreed:

| LESSOR | Triton Container International Limited | | LESSEE | C.I. Banacol S.A. |
|---|---|---|---|---|
| Signature | _Susan Morrison_ | | Signature | |
| Printed Name | Susan Morrison | | Printed Name | |
| Title | Vice President Business Information Group | | Title | |
| Date | OCT 1 9 2007 | | Date | |

The signatory warrants authority to sign on Lessee's behalf

CERTAIN PROCEEDS OF THIS LEASE ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF ONE OR MORE FINANCIAL INSTITUTIONS WHICH HAVE BEEN PERFECTED BY FILING FINANCING STATEMENTS UNDER THE UNIFORM COMMERCIAL CODE AGAINST THE APPLICABLE DEBTOR. A PURCHASE OF OR A SECURITY INTEREST IN THIS DOCUMENT WILL VIOLATE THE RIGHTS OF THE OWNERS, PURCHASERS OR SECURED PARTIES NAMED IN SUCH FINANCING STATEMENTS.

COUNTERPART NO. 1 OF 3 SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE IN EFFECT, IN ANY APPLICABLE JURISDICTION, NO SECURITY INTEREST IN THIS DOCUMENT MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment: B1

## TRIU 8385679-8385998

### BOX SPECIFICATIONS

**General**

| | |
|---|---|
| **Box builder:** | QCRC |
| **Max gross weight:** | 34000 kg |
| **Tare weight** *(incl. machinery)*: | 4595 kg |
| **Max payload:** | 29405 kg |
| **Max heat leakage:** | 34.0 kcal/hr/c |
| **Max air leakage @ 25 mm SWG:** | <3 m³/hr |
| **Internal length:** | 11590 mm |
| **Internal width:** | 2288 mm |
| **Internal height:** | 2546 mm |
| **Cubic capacity:** | 67.5 m³ |
| **Net cubic capacity** *(below load line):* | 64.9 m³ |
| **Height to load line:** | 2446 mm |
| **Door opening height:** | 2569 mm |
| **Door opening width:** | 2290 mm |
| **Exterior Construction** | |
| **Exterior Cladding:** | Steel |
| **Front and rear frame:** | Corten, hot zinc sprayed + paint |
| **Roof panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Side panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Top rails:** | Steel, hot zinc sprayed + paint |
| **Bottom rails:** | Steel, hot zinc sprayed + paint |
| **Doors:** | HGSS + paint |
| **Underfloor:** | Corrugated - MGSS |
| **Underfloor crossmembers:** | non applicable |
| **Paint on steel parts:** | All steel panels have Marine Protective paint system |
| **Genset receptacles:** | Receptacles for clip-on diesel generators |
| **Interior Construction** | |
| **Roof lining:** | Alu, 0.8mm |
| **Side lining:** | Stainless steel, with battens, 0.7mm |
| **Door lining:** | Stainless steel, with battens, 0.7mm |
| **Floor:** | Alu T floor, 63.5mm |
| **Drains:** | 2 at front, 2 at rear |
| **Insulation:** | Polyurethane foam |
| **Insulation blowing agent:** | 100% R141b |
| **Tests** | |
| **Airflow and ventilation rate:** | ATO-DLO (Sprenger) approved |

*Container is fully tested in accordance with ISO requirements:*
*- Max Gross Weight of 30,480 kgs*
*- Sidepanel test is 0.6 P*
*- Floor test is ISO plus 33%*

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment: B2

## TRIU 8385679 - 8385998
### MACHINERY SPECIFICATIONS

**General**

| | |
|---|---|
| **Machinery manufacturer:** | Carrier |
| **Cooling unit model:** | 69NT40-541-005 |
| **Refrigerant:** | R134a |
| **Microprocessor:** | Microlink 3 |
| **Internal depth:** | 414 mm |
| **Unit weight:** | 531 kg |
| **Power requirements:** | Single Voltage 360/460 V, 50/60 Hz, 3 phase |

**Power draw (cooling):**
*(Based on 38°C ambient and 60Hz power supply)*

| Return air | kcal/hr | Power KW |
|---|---|---|
| -18°C | 4500 - 5400 | 6.1 - 8.2 |
| +2°C | 8000 - 11000 | 9.1 - 11.0 |

| | |
|---|---|
| **Heating capacity:** | 4500 kcal/hr |
| **Evaporator air flow:** | High speed: 5437 m³/hr<br>Low speed: 2380 m³/hr |
| **Fresh air renewal:** | 0 - 180 m³/hr |
| **Noise level:** | 78 db (A) |

**Machinery Options**

| | |
|---|---|
| **Water cooled condenser:** | Not included |
| **Temperature recorder:** | Not Included |
| **Datacorder:** | Integral |
| **Power Up rechargeable battery:** | Included |
| **RMU - Power line modem:** | Not included |
| **4 pin monitoring receptacle:** | Not included |
| **USDA receptacles:** | Included |
| **De-humidification:** | Not included |
| **Transducers - pressure sensitive:** | Not included |
| **Controlled atmosphere:** | Provision for Transfresh included |

**Machinery Remarks**

| | |
|---|---|
| **Condenser coil:** | High capacity |

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment: C1

## TRIU 8373256-8373549

### BOX SPECIFICATIONS

**General**

| | |
|---|---|
| **Box builder:** | SCRC |
| **Max gross weight:** | 34000 kg |
| **Tare weight** *(incl. machinery)*: | 4595 kg |
| **Max payload:** | 29405 kg |
| **Max heat leakage:** | 34.0 kcal/hr/c |
| **Max air leakage @ 25 mm SWG:** | <3 m³/hr |
| **Internal length:** | 11590 mm |
| **Internal width:** | 2288 mm |
| **Internal height:** | 2546 mm |
| **Cubic capacity:** | 67.5 m³ |
| **Net cubic capacity** *(below load line)*: | 64.9 m³ |
| **Height to load line:** | 2446 mm |
| **Door opening height:** | 2569 mm |
| **Door opening width:** | 2290 mm |
| **Exterior Construction** | |
| **Exterior Cladding:** | Steel |
| **Front and rear frame:** | Corten, hot zinc sprayed + paint |
| **Roof panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Side panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Top rails:** | Steel, hot zinc sprayed + paint |
| **Bottom rails:** | Steel, hot zinc sprayed + paint |
| **Doors:** | HGSS + paint |
| **Underfloor:** | Corrugated - MGSS |
| **Underfloor crossmembers:** | non applicable |
| **Paint on steel parts:** | All steel panels have Marine Protective paint system |
| **Genset receptacles:** | Receptacles for clip-on diesel generators |
| **Interior Construction** | |
| **Roof lining:** | Alu, 0.8mm |
| **Side lining:** | Stainless steel, with battens, 0.7mm |
| **Door lining:** | Stainless steel, with battens, 0.7mm |
| **Floor:** | Alu T floor, 63.5mm |
| **Drains:** | 2 at front, 2 at rear |
| **Insulation:** | Polyurethane foam |
| **Insulation blowing agent:** | 100% R141b |
| **Tests** | |
| **Airflow and ventilation rate:** | ATO-DLO (Sprenger) approved |

*Container is fully tested in accordance with ISO requirements:*
  *- Max Gross Weight of 30,480 kgs*
  *- Sidepanel test is 0.6 P*
  *- Floor test is ISO plus 33%*

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment: C2

## TRIU 8373256-8373549

### MACHINERY SPECIFICATIONS

**General**

| | |
|---|---|
| **Machinery manufacturer:** | Carrier |
| **Cooling unit model:** | 69NT40-541-302 |
| **Refrigerant:** | R134a |
| **Microprocessor:** | Microlink 3 |
| **Internal depth:** | 414 mm |
| **Unit weight:** | 531 kg |
| **Power requirements:** | Single Voltage 360/460 V, 50/60 Hz, 3 phase |

**Power draw (cooling):**
*(Based on 38°C ambient and 60Hz power supply)*

| Return air | kcal/hr | Power KW |
|---|---|---|
| -18°C | 4500 - 5400 | 6.1 - 8.2 |
| +2°C | 8000 - 11000 | 9.1 - 11.0 |

| | |
|---|---|
| **Heating capacity:** | 4500 kcal/hr |
| **Evaporator air flow:** | High speed: 5437 m³/hr<br>Low speed: 2380 m³/hr |
| **Fresh air renewal:** | 0 - 180 m³/hr |
| **Noise level:** | 78 db (A) |

**Machinery Options**

| | |
|---|---|
| **Water cooled condenser:** | Not included |
| **Temperature recorder:** | Not Included |
| **Datacorder:** | Integral |
| **Power Up rechargeable battery:** | Included |
| **RMU - Power line modem:** | Not included |
| **4 pin monitoring receptacle:** | Not included |
| **USDA receptacles:** | Included |
| **De-humidification:** | Not included |
| **Transducers - pressure sensitive:** | Not included |
| **Controlled atmosphere:** | Provision for Transfresh included |

**Machinery Remarks**

| | |
|---|---|
| **Condenser coil:** | High capacity |

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment: D1

## TRIU 8382005-8382453

### BOX SPECIFICATIONS

**General**

| | |
|---|---|
| **Box builder:** | QCRC |
| **Max gross weight:** | 34000 kg |
| **Tare weight** *(incl. machinery)*: | 4595 kg |
| **Max payload:** | 29405 kg |
| **Max heat leakage:** | 34.0 kcal/hr/c |
| **Max air leakage @ 25 mm SWG:** | <3 m³/hr |
| **Internal length:** | 11590 mm |
| **Internal width:** | 2288 mm |
| **Internal height:** | 2546 mm |
| **Cubic capacity:** | 67.5 m³ |
| **Net cubic capacity** *(below load line):* | 64.9 m³ |
| **Height to load line:** | 2446 mm |
| **Door opening height:** | 2569 mm |
| **Door opening width:** | 2290 mm |
| **Exterior Construction** | |
| **Exterior Cladding:** | Steel |
| **Front and rear frame:** | Corten, hot zinc sprayed + paint |
| **Roof panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Side panel:** | MGSS, 1.0mm end & 0.8mm main |
| **Top rails:** | Steel, hot zinc sprayed + paint |
| **Bottom rails:** | Steel, hot zinc sprayed + paint |
| **Doors:** | HGSS + paint |
| **Underfloor:** | Corrugated - MGSS |
| **Underfloor crossmembers:** | non applicable |
| **Paint on steel parts:** | All steel panels have Marine Protective paint system |
| **Genset receptacles:** | Receptacles for clip-on diesel generators |
| **Interior Construction** | |
| **Roof lining:** | Alu, 0.8mm |
| **Side lining:** | Stainless steel, with battens, 0.7mm |
| **Door lining:** | Stainless steel, with battens, 0.7mm |
| **Floor:** | Alu T floor, 63.5mm |
| **Drains:** | 2 at front, 2 at rear |
| **Insulation:** | Polyurethane foam |
| **Insulation blowing agent:** | 100% R141b |
| **Tests** | |
| **Airflow and ventilation rate:** | ATO-DLO (Sprenger) approved |

*Container is fully tested in accordance with ISO requirements:*
  *- Max Gross Weight of 30,480 kgs*
  *- Sidepanel test is 0.6 P*
  *- Floor test is ISO plus 33%*

Ref. Code: BNC 70
Dated: March 1, 2005
Attachment: D2

## TRIU 8382005-8382453
### MACHINERY SPECIFICATIONS

**General**

| | |
|---|---|
| **Machinery manufacturer:** | Carrier |
| **Cooling unit model:** | 69NT40-541-006 |
| **Refrigerant:** | R134a |
| **Microprocessor:** | Microlink 3 |
| **Internal depth:** | 414 mm |
| **Unit weight:** | 531 kg |
| **Power requirements:** | Single Voltage 360/460 V, 50/60 Hz, 3 phase |

**Power draw (cooling):**
*(Based on 38°C ambient and 60Hz power supply)*

| Return air | kcal/hr | Power KW |
|---|---|---|
| -18°C | 4500 - 5400 | 6.1 - 8.2 |
| +2°C | 8000 - 11000 | 9.1 - 11.0 |

| | |
|---|---|
| **Heating capacity:** | 4500 kcal/hr |
| **Evaporator air flow:** | High speed: 5437 m³/hr<br>Low speed: 2380 m³/hr |
| **Fresh air renewal:** | 0 - 180 m³/hr |
| **Noise level:** | 78 db (A) |
| **Machinery Options** | |
| **Water cooled condenser:** | Not included |
| **Temperature recorder:** | Not Included |
| **Datacorder:** | Integral |
| **Power Up rechargeable battery:** | Included |
| **RMU - Power line modem:** | Not included |
| **4 pin monitoring receptacle:** | Not included |
| **USDA receptacles:** | Included |
| **De-humidification:** | Included |
| **Transducers - pressure sensitive:** | Not included |
| **Controlled atmosphere:** | Provision for Transfresh included |
| **Machinery Remarks** | |
| **Condenser coil:** | High capacity |

**EXHIBIT C**

Ref. Code: BNC 70
Dated: March 1, 2005

AMENDMENT NUMBER TWO
to the Long Term Lease Agreement between
Triton Container International Limited ("Lessor")
and
C.I. Banacol S.A. ("Lessee")
dated March 1, 2005, referenced BNC 70 (the "Agreement")

I.   Effective April 1, 2011, Lessee's billing address shall be changed to the following:

Banacol Marketing Corp
355 Alhambra Circle, Suite 1510
Coral Gables, FL 33134

II.  Whereas the Agreement remained in full force and effect through June 30, 2011, the parties agree to the following, effective July 1, 2011:

1.   The Agreement is hereby extended through December 31, 2012 (the new Expiration Date).

2.   As a result of the extension of the Agreement, Sections I.A., **Lease Rate**, I.B., **Lease Term**, and V. EXPIRATION SCHEDULE, shall be deleted and replaced with the following:

I.A.   **Lease Rate:**

| Equipment Type | Per Day Per Container |
| --- | --- |
| 40' high cube refrigerated container | USD   7.95 |

I.B.   **Lease Term:**

Each container shall remain on lease under this Agreement for a minimum period of eighteen (18) months commencing July 1, 2011.

V.   EXPIRATION SCHEDULE

This Agreement expires December 31, 2012.  A period of three (3) months is granted from the date of expiration of this Agreement during which time the containers on lease are to be redelivered (the "Build Down Period").  Commencing with the Build Down Period, Lessee shall be invoiced monthly in arrears.  If any containers remain on lease after the Build Down Period, Lessee shall be invoiced at the following rate ("Post Build Down Rate") until each container is redelivered:

| Equipment Type | Per Day Per Container |
| --- | --- |
| 40' high cube refrigerated container | USD 21.00 |

However, should Lessor terminate this Agreement due to Lessee's default, the Post Build Down Rate shall become effective on the date of termination notice and lessee shall no longer be in possession of the containers with Lessor's consent.  All other terms of this Agreement shall remain in full force until all containers have been redelivered and Lessee has fulfilled all of its obligations under this Agreement.

Ref. Code: BNC 70
Dated: March 1, 2005

## AMENDMENT NUMBER TWO
(continued)

III.   The Business Conditions shall be deleted in their entirety and replaced with the attached set of Business Conditions.

All other terms and conditions shall be in accordance with the Agreement.

All terms of the Agreement, as amended, shall remain in full force until all containers have been redelivered and Lessee has fulfilled all of its obligations under the Agreement.

Accepted and Agreed

Triton Container International Limited                        C.I. Banacol S.A.

           LESSOR                                                    LESSEE

By: _____                            By: _____

        Susan Morrison

Printed Name: _____                          Printed Name: _____

     Vice President
Title: Business Information Group                       Title: _____

Date: _____NOV 1 1 2011_____                          Date: _____

                                        The signatory warrants authority to sign on Lessee's behalf

CERTAIN PROCEEDS OF THIS LEASE ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF ONE OR MORE FINANCIAL INSTITUTIONS WHICH HAS BEEN PERFECTED BY FILING FINANCING STATEMENTS UNDER THE UNIFORM COMMERCIAL CODE AGAINST THE APPLICABLE DEBTOR. A PURCHASE OF OR A SECURITY INTEREST IN THIS DOCUMENT WILL VIOLATE THE RIGHTS OF THE OWNERS, PURCHASERS OR SECURED PARTIES NAMED IN SUCH FINANCING STATEMENTS.

I:\BNC70_LT_A2.DOC

COUNTER PART NO. _____1_____ OF [3] SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE IN EFFECT IN ANY APPLICABLE JURISDICTION, NO SECURITY INTEREST IN THIS DOCUMENT MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

**TRITON**
**BUSINESS CONDITIONS**

**1.    DELIVERY OF CONTAINERS**

Lessee acknowledges receipt of the containers leased hereunder in good condition as evidenced conclusively by its execution of the equipment interchange prescribed by Lessor.  These business conditions shall apply to all Triton containers.

**2.    RENTAL AND OTHER CHARGES**

a.    Lessee agrees to pay rent as set forth in this Agreement for all containers described thereon from the day a container is delivered and/or interchanged to Lessee up to and including the day such container is off-hired.

b.    All payments due Lessor shall be paid in United States Dollars (unless other currency is indicated in this Agreement) within fifteen (15) days of the date of Lessor's invoice, to Lessor at the address in this Agreement.  Lessee shall pay the invoiced amount, without deduction or offsets.  Disputes, if any, shall accompany full payment.  Lessor and Lessee acknowledge that timely payment at such address will be performance of Lessee's obligations under this Agreement and the address specified in this Agreement will be the place of performance of this Agreement.  If Lessor's invoice is not paid when due, Lessor may, without prejudice to any other remedy it may have, charge, as additional rental, a service charge at the rate of eighteen (18) percent per annum on the unpaid balance.

**3.    RETURN OF CONTAINERS AND RISK OF DAMAGE AND LOSS**

a.    Lessee shall return all containers to Lessor's depot(s) in the locations designated in this Agreement or in the event Lessor so designates to another terminal within the same port area.

b.    Lessee is liable to Lessor for all damage to or loss or destruction of a container subsequent to delivery and prior to return to Lessor except that caused by normal wear and deterioration.  "Normal wear and deterioration" does not, without limitation, include: (a) damage by forklifts or other handling equipment; (b) rust, corrosion or damage caused (i) by application of sulfur dioxide or any other chemical, fumigant or pesticide to a container or its contents or (ii) by release of a chemical from any cargo or other material contained in a container; (c) changes that normal maintenance could have prevented.

i. DAMAGE.  For each container redelivered in damaged condition, Lessor will effect an inspection of the container using, for that container type, the latest edition of the Guide for Inspection published by the Institute of International Container Lessors ("IICL"), subject to those certain modifications to the deformation limits for dry van and open top containers as specified in the Triton Inspection Standards dated July 31, 2007, as Lessor, in its sole discretion, may amend them from time to time, available from Lessor's website (www.tritoncontainer.com/tritoncontainer/aboutFleet.do) or from Lessor upon Lessee's reasonable request. The damage costs for which Lessee is liable shall be determined based on the IICL Manual for Repair for that container type.

Provided, however, Lessee shall be responsible for and arrange for the decontamination and cleaning of any container (a "Hazmat Container") contaminated with or containing a hazardous substance, waste or residue (whether discovered upon or after return of the Hazmat Container), including arranging for the disposal of any hazardous substance, waste, or residue or other material that may be generated by the decontamination and cleaning of a Hazmat Container. Any Hazmat Container shall remain on-hire until completely decontaminated and cleaned by Lessee.  Should Lessee fail to fully decontaminate and clean a Hazmat Container within a reasonable time not to exceed thirty (30) days after it has become contaminated, Lessor may declare the Hazmat Container a constructive total loss, in which case title to the Hazmat Container shall pass to Lessee, effective at 12:01 am upon the date of its contamination and Lessee shall pay the replacement value for the Hazmat Container.  Lessee shall be responsible for and shall pay for the disposal of any Hazmat Container that Lessor has declared a constructive total loss.  In its sole discretion, Lessor may elect to dispose of such a container.  If Lessor does so, Lessee shall on demand pay to Lessor all costs Lessor incurs in doing so.

ii. LOSS, THEFT, DESTRUCTION OR DAMAGE.   In the event of loss, theft, destruction of any container or damage that Lessor, in its sole discretion, determines is not possible or economically viable to repair, rental shall terminate upon Lessor's receipt of notice together with proof ("Proof of Loss") Lessor deems acceptable of the loss, theft or destruction (which may include, without limitation, a declaration from Lessee verifying and setting forth the circumstances), provided Lessor receives payment of the container's depreciated replacement value ("DRV") within thirty (30) days of the date of Lessor's invoice for DRV.  If Lessor does not receive payment in that thirty (30) day period, rental charges shall continue unabated until receipt. Lessor will not apply Lessee's payments to DRV invoices unless so specified by Lessee.  Lessor's issuance of an invoice for or receipt of payment for DRV shall not constitute a waiver of its right to require Proof of Loss.  If Lessee fails to provide Proof of Loss, Lessor may rescind a DRV invoice at which point Lessor will credit Lessee the amount, if any, it has received in payment of the rescinded invoice.

**4.    FORCE MAJEURE**

LESSEE'S OBLIGATIONS UNDER THIS AGREEMENT ARE ABSOLUTE AND SHALL NOT BE AFFECTED BY ANY CIRCUMSTANCE OR EVENT BEYOND LESSEE'S CONTROL, OF WHATEVER NATURE, INCLUDING, BUT NOT LIMITED TO FIRE, STORM, FLOOD, EARTHQUAKE, EXPLOSION, ACCIDENTS, ACTS OF THE PUBLIC ENEMY, SABOTAGE, RIOTS, CIVIL DISORDER, INSURRECTION, WAR, STRIKES, LOCKOUTS, LABOR DISPUTES, LABOR SHORTAGE, WORK STOPPAGES, TRANSPORTATION EMBARGOES OR DELAYS, FAILURE OR SHORTAGE OF MATERIAL, EQUIPMENT, FUEL, ELECTRICITY OR OTHER SUPPLIES, FAILURE OF SUPPLIERS TO DELIVER AS REQUESTED, FAILURE OF REPAIR FACILITIES TO FINISH REPAIRS, ACTS OF GOD, AND ACTS, ORDERS, DIRECTIONS, OR REGULATIONS OR PRIORITIES OF ANY GOVERNMENT OR ITS BRANCHES OR AGENCIES.  LESSEE WAIVES ANY RIGHTS IT MAY HAVE UNDER ANY STATUTE, LAW OR TREATY LIMITING LESSEE'S LIABILITY OR THE LIABILITY OF ANY VESSEL ON WHICH THE LEASED CONTAINERS ARE USED OR ANY PERSON HAVING AN INTEREST IN ANY SUCH VESSEL, INCLUDING, WITHOUT LIMITATION, ANY AND ALL RIGHTS UNDER 46 U.S.C. § 30501-30512 AND THE CONVENTION ON LIMITATION OF LIABILITY FOR MARINE CLAIMS OF 1976 AND ANY SUBSEQUENT REVISION OF THOSE STATUTORY PROVISIONS AND THAT CONVENTION.

**5.    OPERATION, MAINTENANCE AND REPAIR**

a.    Lessee shall, at its sole cost and expense, maintain the containers in good repair and safe operating condition.  All maintenance, repair and replacement materials used shall meet or exceed minimum acceptable standards as set forth by the Institute of International Container Lessors effective at the time the repairs or maintenance are performed.  In addition to its other obligations under this Section, Lessee shall perform preventive maintenance on each container as necessary, but not less than once in each period of twelve months from pick-up.

b.    Receipt or delivery of containers or any other act by an agent or employee of or independent contractor engaged by Lessee shall be deemed to be the act of Lessee and be binding upon Lessee.

2011(2)BIZCONS_TCLL

c.     Lessor's containers are identified by appropriate lettering and numbering, which Lessee agrees not to change or obliterate, except that at the written request of Lessor, Lessee may change or supplement such marks as Lessor shall request.  Lessee may, however, add other markings as may be required, provided that the containers so marked when returned by Lessee to Lessor, shall be free of all such markings.  If Lessee fails to remove such markings, Lessor may remove such markings for the account of Lessee.

d.     Lessee shall at its expense comply with all laws, regulations or orders including, without limitation, treaties, international conventions and agreements, customs, and laws and regulations of federal, state, foreign and local governments and agencies which in any way affect any container or its use, operation or storage, including, but not limited to, all laws relating to the environment, public health and safety, and the workplace.

e.     At delivery, the containers will be fitted with the plate the Convention for Safe Containers (the "CSC") requires.  While the containers are on hire to Lessee, Lessor's Approved Continuous Examination Program shall not apply to the containers.  Instead, Lessee shall comply with any requirement applicable to the containers under the CSC and the containers shall be subject to Lessee's Approved Continuous Examination Program.

f.     Lessee shall at its expense comply with all rules and practices of ports, depots, storage areas and transportation companies consistent with the other requirements of this Section 5.

g.     Lessee shall have no power to incur, and shall keep the containers free from charges, liens or encumbrances.

h.     Lessee agrees that the containers will only be used for the purpose of transporting goods in international transport.

i.     Lessee, and not Lessor, is responsible for ownership, control, and acceptance of the contents of any container, including any hazardous substance, waste, or residue which is carried in such container, and for arranging for the delivery destination of the container and its contents.

6.     **DEFAULT, REMEDIES UPON DEFAULT**

a.     Should Lessee (i) fail to pay any sum due under this Agreement within fifteen (15) days of the date of Lessor's invoice, (ii) fail to perform any other obligations under this Agreement, (iii) cease doing business as a going concern, become insolvent, commit an act of bankruptcy or become the subject of any proceeding under any bankruptcy act, or its counterpart under the law of any nation or territory outside the United States of America, (iv) fail to pay or perform any obligation in any other agreement with, instrument in favor of, or note payable to Lessor, (v) transfer substantially all of its assets or merge or consolidate with or be acquired by any other person or entity, without Lessor's prior written consent, (vi) during any calendar year without Lessor's prior written consent, sell, retire or issue new shares in a sufficient number that more than fifty (50%) percent of Lessee's shareholders have not held their shares for at least one year, (vii) without Lessor's prior written consent, change its chief executive officer or chief financial officer, (viii) without Lessor's prior written consent, change its board of directors so that a majority of the directors have not held their directorships for at least one year, (ix) be named on the list of Specially Designated Nationals and Blocked Persons maintained by the U.S. Department of the Treasury's Office of Foreign Assets Control available at http://www.treas.gov/offices/enforcement/ofac/sdn/index.shtml, or as otherwise published from time to time, or otherwise become the subject of U.S. sanctions laws, orders or regulations, or (x) provide to Lessor any financial statement that is not true and correct in any material respect, then Lessor may without notice and without releasing Lessee of its obligations to Lessor, terminate this Agreement, declare the balance of the rental to be due and payable, and retake possession of the containers free of any claims of Lessee.  Lessee shall pay any and all expenses Lessor incurs in retaking possession of the containers or enforcing Lessor's rights upon termination.  Lessor may, in its sole discretion, waive a default by Lessee, but no waiver shall be construed to modify the terms of this Agreement, including these Business Conditions.  In the event of termination, Lessee shall no longer be in possession of the containers with Lessor's consent and Lessee shall return the containers to Lessor at such place as Lessor shall direct.  Lessee shall continue to pay rental charges for containers until the containers are (i) returned in as good condition as received, normal wear and deterioration excepted, (ii) repaired and fit for subsequent rental or (iii) settlement is made.  Termination shall not relieve Lessee of any liabilities or obligations incurred prior to return, repair or settlement.  Without limiting Lessee's indemnity obligations under Section 9 of these Business Conditions, should Lessor retake possession of all or any part of the containers, Lessee authorizes Lessor to take possession of any property in, on or attached to the containers that is not the property of Lessor, and without liability for its care or safekeeping, to place that property in storage at the risk and expense of Lessee.  With regard to any container not returned to Lessor within thirty (30) days of termination, Lessee will then owe Lessor an amount equal to the full replacement value as provided for in the Agreement, without regard to depreciation, for any container that has not been redelivered.

b.     Lessee waives any and all rights it may have under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq., including, without limitation, any immunity Lessee may have from pre-judgment, seizure, arrest or attachment.

7.     **EXCLUSION OF WARRANTIES**

THE CONTAINERS ARE LEASED AS IS.  NO CONDITION OR WARRANTY WHATSOEVER OF ANY KIND HAS BEEN GIVEN BY LESSOR, AND ALL CONDITIONS AND WARRANTIES WHETHER EXPRESSED OR IMPLIED, WHETHER IN RELATION TO THE FITNESS OF THE CONTAINERS FOR ANY PARTICULAR PURPOSE OR COUNTRY, OR WHETHER IN RELATION TO MERCHANTABILITY OR AS TO DESCRIPTION, STATE, QUALITY OR CONDITION OF THE CONTAINERS AT DELIVERY OR AT ANY OTHER TIME ARE HEREBY WAIVED, EXCLUDED AND EXTINGUISHED.

8.     **NOTICES**

All billings, payments and written notices from either party to the other shall be given to the address shown in this Agreement, or to such other address as may be designated in writing by either party to the other.

9.     **INDEMNITY**

Lessee shall indemnify and hold Lessor harmless from all liability, damage, cost or expense (including, without limitation, expenses in defending any claim or suit such as attorney's fees, court costs and other expenses) arising out of, (i) any failure of Lessee to comply with its obligations under this Agreement; (ii) any claim whether private or governmental, for personal injury or death, and for loss of or damage to person, property, cargo or vessels arising out of or incident to the ownership, selection, possession, leasing, operation, control, use, storage, loading, unloading, moving, maintenance, delivery or return of the containers; (iii) any forfeiture, seizure, or impounding of, or claim of charge, lien or encumbrance on the containers; (iv) any activities or operations of Lessee, or any act or omission of Lessee; and/or (v) any actual or threatened release of or contamination by any hazardous substance, waste, or residue.  Each party undertakes promptly to give notice to the other of claims against it or action against it with respect thereto and Lessee agrees not to settle any action without the consent of Lessor.

10.     **SUBLEASING AND DIRECT INTERCHANGING**

      Lessee shall not have the right to assign this Agreement or to sublet, rent, directly interchange or otherwise hire out or part with possession of a container, to any other party without the prior written consent of Lessor. Except for direct interchanges, such consent of Lessor shall not operate to relieve Lessee of any of its obligations hereunder.

11.     **TAXES AND GENERAL**

      a.      Lessee shall pay, or, if Lessor, in its sole discretion elects to pay them, shall reimburse Lessor for, all taxes, duties, fees and other assessments of whatever nature, including, but not limited to, sales, use, gross receipts, gross income, personal property, ad valorem, franchise, value added, customs, excise, license, transfer and stamp taxes, together with any penalties, fines and interest thereon, imposed by any government or other authority (other than taxes on Lessor's net income if such net income taxes are not incurred solely as a result of Lessee's leasing or use of the containers) and all charges of whatever nature incurred in ports, depots, storage areas or otherwise which taxes, duties, fees, other assessments or charges result from the leasing, use, possession, storage, importation, exportation, location, repair, delivery or value of the containers or the making of any payment required to be made by Lessee under this Agreement. In the event that any government or other authority shall compel Lessee to withhold any portion of any payments due to Lessor as taxes, duties, fees, other assessments or charges, Lessee shall (i) make the withholding and remit it to the appropriate government or other authority on a timely basis, and (ii) shall in addition pay such additional amounts to Lessor in order that Lessor shall receive an amount equal to the gross amount of payments Lessor would have received under this Agreement had no such withholding been applicable.

      b.      The Attachments, including this Attachment of Business Conditions, and any other Attachment hereto, represent the entire Agreement between Lessor and Lessee and may be amended, modified or changed only by an agreement in writing between Lessor and Lessee. If Lessee takes possession of or retains any of the containers provided hereunder after receipt of this Agreement, then this Agreement shall be effective and binding, whether or not signed by Lessee. For purposes of creating a binding Lease Agreement or in determining the rights and obligations under such contract in any court of law, the parties acknowledge that a signature reproduced by either facsimile or photocopy shall have the same force and effect as an original signature and that the original and any such copies shall be deemed one and the same document.

      c.      This Attachment of Business Conditions shall be incorporated into the Agreement between Lessor and Lessee. If this Attachment of Business Conditions conflicts with any other Attachment to the Agreement, the other Attachment shall prevail.

      d.      This Agreement and any rights and liabilities arising out of or relating to this Agreement shall be governed by the laws in effect in California. Lessor may require that any dispute or proceeding arising out of or relating to this Agreement shall, at Lessor's sole option and discretion, be brought only in state or federal courts having jurisdiction over the City and County of San Francisco or before the American Arbitration Association in San Francisco. Lessee consents to jurisdiction and venue in those courts. Lessee agrees to pay Lessor's costs and attorneys' fees in any action brought to enforce any of the provisions of this Agreement or any right granted to Lessor hereunder.

      e.      Lessee acknowledges that the containers furnished to it under this Agreement are leased in contemplation of use on vessels owned and/or operated and/or chartered and/or managed by Lessee and for the prosecution of voyages thereon, and that any container furnished to it hereunder is also furnished to the vessel on which the container is used. Lessee may use the container on more than one vessel owned, operated, chartered or managed by Lessee, and agrees that each time such a container is used in connection with the operation of a vessel, Lessor is furnishing such container to Lessee and the vessel anew and that Lessor is relying on the credit of the vessel in furnishing the container. Lessee agrees to maintain records reflecting the vessels and voyages upon which the containers furnished under this Agreement are used and shall make such records available to Lessor upon reasonable demand by Lessee. Lessee agrees to notify Lessor in the event that containers furnished under this Agreement are used for a purpose other than in connection with the operation of vessels (which operation may include incidental use on land) and the prosecution of voyages thereon. Lessee warrants that it is authorized to enter into this Agreement on behalf of any and all vessels owned and/or operated and/or chartered and/or managed by Lessee.

      f.      Should Lessee fail to return containers upon termination of this Agreement, Lessee agrees that all of its obligations (including, without limitation, the obligation to pay rent) to Lessor under this Agreement shall continue in effect until all containers leased under this Agreement have been returned to Lessor.

      g.      Lessee acknowledges that Lessor is a Bermuda corporation. Certain of the containers subject to this Agreement may be owned by third parties other than the named Lessor.

      h.      This Agreement is binding upon the parties, their successors and assigns. The provisions of this Agreement are separable. If, by judicial interpretation or construction, or if, by promulgation or administrative interpretation of any statute, executive order or regulation, any provision of this Agreement in Lessor's reasonable view becomes prohibited by law, the provision shall be ineffective to the extent of the prohibition without invalidating the remaining provisions of this Agreement.

      i.      Provided Lessee complies with all of the terms and conditions of the Agreement, Lessee shall have quiet possession of the containers.

**Accepted and Agreed:**

| | |
|---|---|
| **LESSOR**     Triton Container International Limited | **LESSEE**     C.I. Banacol S.A. |
| **Signature** _____ | **Signature** _____ |
| **Printed Name**    Susan Morrison | **Printed Name** _____ |
| **Title**     Vice President, Business Information Group | **Title** _____ |
| **Date**     NOV 1 1 2011 | **Date** _____ |

The signatory warrants authority to sign on Lessee's behalf

COUNTER PART NO. _____ I _____ OF [ 5 ] SERIALLY NUMBERED MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE IN EFFECT IN ANY APPLICABLE JURISDICTION, NO SECURITY INTEREST IN THIS DOCUMENT MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY

CERTAIN PROCEEDS OF THIS LEASE ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF ONE OR MORE FINANCIAL INSTITUTIONS WHICH HAS BEEN PERFECTED BY FILING FINANCING STATEMENTS UNDER THE UNIFORM COMMERCIAL CODE 2011(2)BIZCONDS.HOL. THE APPLICABLE DEBTOR. A PURCHASER OF OR A SECURITY INTEREST IN THIS DOCUMENT WILL VIOLATE THE RIGHTS OF THE OWNERS, PURCHASERS OR SECURED PARTIES NAMED IN SUCH FINANCING STATEMENTS

**EXHIBIT D**

# TRITON

Triton Container International Incorporated

November 25, 2013

Mr. Santiago Martínez, Chief Financial Officer
Ms. Natalia Henao
General Director
C.I. Banacol S.A.
355 Alhambra Circle, Suite 1510
Coral Gables, Florida 33134

Re:   Lease Agreement between Triton Container International Limited ("Triton") and C.I. Banacol S.A. ("BNC") designated by reference code BNC 70 (the "Agreement"), as amended.

Dear Mr. Martinez and Ms. Henao:

As you well know, Triton sent you a default letter ("Letter") dated November 5, 2013, notifying you that BNC defaulted under the Agreement. Since receipt of the Letter, BNC has failed to bring the account current and as a result, in accordance with Section 6 of the Triton Business Conditions of the Agreement, Triton gives notice of termination of the Agreement.

BNC is therefore no longer in possession of the containers the Agreement covers with Triton's consent. Triton demands immediate return of the containers and full and immediate payment of all sums due under the Agreement.

Effective immediately, BNC will start being invoiced at the post build down rate of USD 21.00 per day per container, as defined in the Agreement. BNC remains responsible for rental and other charges with respect to each container until returned as the Agreement provides. Termination does not relieve BNC of liabilities and obligations incurred before return or arising afterward.

Immediately before termination, BNC was liable for amounts in excess of USD 184,000. If BNC does not return all containers within 30 days, BNC will, as Section 6 of the Triton Business Conditions of the Agreement provides, then owe Triton an amount equal to the full replacement value as provided for in the Agreement, without regard to depreciation, for any container that has not been redelivered. That will increase BNC's liability to an amount in excess of USD 3.7 million. See Exhibits A and B for details.

Sincerely,

Susan A. Morrison,
Vice President, Business Information Group

55 Green Street, San Francisco, California 94111, (415) 956-6311, FAX (415) 421-5318

C.I. Banacol S.A.
November 25, 2013
Page 2

**Exhibit A: Outstanding Invoices as of November 22, 2013**

| Invoice | Date of Invoice | Due Date | Amount |
|---|---|---|---|
| QR5009566 | 2/28/2013 | 3/30/2013 | $466.22 |
| QR5009660 | 3/31/2013 | 4/30/2013 | $1,264.44 |
| LR1176473 | 4/30/2013 | 5/30/2013 | $17,735.20 |
| QR5009755T | 4/30/2013 | 5/30/2013 | $809.26 |
| QR5009880 | 5/31/2013 | 6/30/2013 | $992.64 |
| LR1180150 | 6/30/2013 | 7/30/2013 | $33,517.20 |
| QR5010006 | 6/30/2013 | 7/30/2013 | $975.75 |
| LR1182016 | 7/31/2013 | 8/30/2013 | $33,517.20 |
| QR5010123 | 7/31/2013 | 8/30/2013 | $1,031.47 |
| LR1183884 | 8/31/2013 | 9/30/2013 | $32,436.00 |
| QR5010211 | 8/31/2013 | 9/30/2013 | $1,543.87 |
| LR1185756 | 9/30/2013 | 10/30/2013 | ($3,577.50) |
| LR1185755 | 9/30/2013 | 10/30/2013 | $32,051.10 |
| QR5010341 | 9/30/2013 | 10/30/2013 | $1,734.00 |
| LR1187625 | 10/31/2013 | 11/30/2013 | $28,143.00 |
| QR5010436 | 10/31/2013 | 11/30/2013 | $1,805.84 |
| **Total Invoices Outstanding** | | | **$184,445.69** |

**Exhibit B: Amounts Due after Termination as of November 22, 2013**

| | USD |
|---|---|
| Outstanding Invoices | $184,445.69 |
| Total Replacement Value ($32K x 110 units) | $3,520,000.00 |
| Total Handling Charges | $0.00 |
| Total Damage Charges | $0.00 |
| **Total due after Termination** | **$3,704,445.69** |

**Note: These amounts assume no returns occur within 30 days following termination.  To the extent Lessee returns containers, Total Replacement Value will decrease but Handling and Damage Charges will increase.**

**EXHIBIT E**

# SheppardMullin

Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
415.434.9100 main
415.434.3947 main fax
www.sheppardmullin.com

415.774.2994 direct
cdonovan@sheppardmullin.com

File Number:  03KM-106101

January 17, 2014

BY EMAIL AND BY FEDERAL EXPRESS

C.I. Banacol S.A.
Attention:  Santiago Martinez, CFO
          Natalie Henao, General Director
355 Alhambra Circle, Suite 1510
Coral Gables, FL 33134

Re:     Default Under Lease Agreement – Triton Ref. Code BNC 70 (the "Agreement")

Dear Sir/Madam:

We are Triton's attorneys.  Following your default, Triton terminated the Agreement by notice to you dated November 25, 2013.  In that notice, Triton, in accordance with the Agreement's terms, demanded immediate return of its containers.  You have not complied with that demand.

Section 11.e. of the Agreement states:

> Lessee acknowledges that the containers furnished to it under this Agreement are leased in contemplation of use on vessels owned and/or operated and/or chartered and/or managed by Lessee and for the prosecution of voyages thereon, and that any container furnished to it hereunder is also furnished to the vessel on which the container is used.  Lessee may use the container on more than one vessel owned, operated, chartered or managed by Lessee, and agrees that each time such a container is used in connection with the operation of a vessel, Lessor is furnishing such container to Lessee and the vessel anew and that Lessor is relying on the credit of the vessel in furnishing the container.  Lessee agrees to maintain records reflecting the vessels and voyages upon which the containers furnished under this Agreement are used and shall make such records available to Lessor upon reasonable demand by Lessor.  Lessee agrees to notify Lessor in the event that containers furnished under this Agreement are used for a purpose other than in connection with the operation of vessels (which operation may include incidental use on land) and the prosecution of voyages thereon.  Lessee warrants that it is authorized to enter into this Agreement on behalf of any and all vessels owned and/or operated and/or chartered and/or managed by Lessee.

# SheppardMullin

C.I. Banacol S.A.
January 17, 2014
Page 2


On Triton's behalf we demand you provide not later than January 21, 2014 the records you've
agreed to keep "reflecting the vessels and voyages upon which the containers furnished under
the Agreement [have been] used" and also the location by port and depot of any containers not
presently in transit.  Please provide this information by fax or courier to me or as a pdf
attachment to an email message at my email address above.  If you fail promptly to do so,
Triton will take whatever steps it deems advisable without further notice to you.


Very truly yours,

Charles S. Donovan
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


SMRH:416070730.3

**EXHIBIT F**

**C.I. Banacol**
Statement of Accounts
**as of January 22, 2014**

| Customer | Invoice | Invoice Date | Invoice Due Date | Amount |
|---|---|---|---|---|
| BNC 70 | QR5009566 | 2/28/2013 | 3/30/2013 | $ 466.22 |
| BNC 70 | QR5009660 | 3/31/2013 | 4/30/2013 | $ 1,264.44 |
| BNC 70 | QR5009755T | 4/30/2013 | 5/30/2013 | $ 809.26 |
| BNC 70 | QR5009880 | 5/31/2013 | 6/30/2013 | $ 992.64 |
| BNC 70 | LR1180150 | 6/30/2013 | 7/30/2013 | $ 21,252.40 |
| BNC 70 | QR5010006 | 6/30/2013 | 7/30/2013 | $ 975.75 |
| BNC 70 | LR1182016 | 7/31/2013 | 8/30/2013 | $ 33,517.20 |
| BNC 70 | QR5010123 | 7/31/2013 | 8/30/2013 | $ 1,031.47 |
| BNC 70 | LR1183884 | 8/31/2013 | 9/30/2013 | $ 32,436.00 |
| BNC 70 | QR5010211 | 8/31/2013 | 9/30/2013 | $ 1,543.87 |
| BNC 70 | LR1185756 | 9/30/2013 | 10/30/2013 | $ (3,577.50) |
| BNC 70 | LR1185755 | 9/30/2013 | 10/30/2013 | $ 32,051.10 |
| BNC 70 | QR5010341 | 9/30/2013 | 10/30/2013 | $ 1,734.00 |
| BNC 70 | LR1187625 | 10/31/2013 | 11/30/2013 | $ 28,143.00 |
| BNC 70 | QR5010436 | 10/31/2013 | 11/30/2013 | $ 1,805.84 |
| BNC 70 | LR1189488 | 11/30/2013 | 12/30/2013 | $ (5,604.75) |
| BNC 70 | LR1189487 | 11/30/2013 | 12/30/2013 | $ 87,231.00 |
| BNC 70 | QR5010522 | 11/30/2013 | 12/30/2013 | $ 1,711.42 |
| BNC 70 | CU5010511 | 11/30/2013 | 12/30/2013 | $ 36,039.08 |
| BNC 70 | RU0050725 | 11/30/2013 | 12/30/2013 | $ 10,556.26 |
| BNC 70 | LR1191376 | 12/31/2013 | 1/30/2014 | $ 71,610.00 |
| BNC 70 | QR5010613 | 12/31/2013 | 1/30/2014 | $ 2,261.95 |
| BNC | RU0051237 | 12/31/2013 | 1/30/2014 | $ 2,645.36 |
| Total Due | | | | $ 360,896.01 |

**EXHIBIT G**

**From:** Gustavo.Herrera@banacol.com.co [mailto:Gustavo.Herrera@banacol.com.co]
**Sent:** Wednesday, January 15, 2014 3:43 PM
**To:** Diago, Federico
**Subject:** Re: Fwd: Triton Invoicing - BNCX

Hola Federico,

Estamos ubicando los equipos en Costa Rica para entregarlos.  Los equipos operan en la operación de nuestras tres sedes y en dos buques.  Pero estamos trabajando en el tema.

Yo aprovecho para insistirte en que nos ayudes dentro de Triton para que consideren la tarifa de US$21 pues el efecto de ésta es agrandar el problema y dificultar su solución.

Nuevamente invoco todos los años en que Banacol fué un excelente cliente, pero ahora está pasando por dificultades y ahora lo que necesitamos es ayuda.

Atentamente,

    Gustavo Herrera
    C.I. BANACOL S.A.